**PROFESSIONAL MANAGERS' ASSOCIATION, George H. Coffin, Jr., R. Dennis Morris, Judith B. Tomaso, Appellants,**

v.

**UNITED STATES of America, et al.**

**No. 83–1142.**

United States Court of Appeals, District of Columbia Circuit.

Argued October 4, 1983.

Decided May 10, 1985.

Michael J. Riselli, Washington, D.C., for appellants.

Valerie K. Schurman, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty. (at time brief was filed), Royce C. Lamberth, R. Craig Lawrence and Michael J. Ryan, Asst. U.S. Attys., Washington, D.C., were on brief, for appellees.

Before BORK and SCALIA, Circuit Judges, and WILLIAMS,* Senior District Judge for the Central District of California.

Opinion PER CURIAM.

PER CURIAM.

The Professional Managers' Association ("PMA"), and three federal employees, appeal from a decision of the district court (Flannery, J.) granting the United States' motion to dismiss or, in the alternative, for summary judgment. Appellants alleged that the Office of Personnel Management ("OPM") had violated various statutory provisions and the Constitution when it implemented the Merit Pay System provided for in the Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. § 5401 *et seq.* (1982). To correct these alleged violations, appellants sued seeking monetary damages as well as declaratory and injunctive relief. After fully considering appellants' claims, we have concluded that we lack jurisdiction over the appeal, and we therefore transfer the case to the United States Court of Appeals for the Federal Circuit. *See* 28 U.S.C. § 1631 (1982).

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1982).

## I.

The Professional Managers' Association is a non-profit organization that represents certain federal managers and supervisors. On January 22, 1982, it commenced the present lawsuit, together with three federal employees, in order to challenge the legality of OPM's implementation of the merit pay system provided for in the Civil Service Reform Act of 1978. When Congress passed the CSRA it created a new system of distributing salary increases to federal supervisors and managers in grades General Schedule ("GS") 13, 14, and 15. This system was supposed to emphasize merit rather than length of service and required OPM to determine annually the amount of funds available for distribution as merit pay increases. The fund available for such salary increases was to consist of the sum of:

(1) within-grade increases and quality step increases which would have been paid out to those employees during the fiscal year under the GS system; and

(2) a percentage, but not less than one-half, of the "comparability adjustments" which would have been paid to those employees during the fiscal year.

*See* 5 U.S.C. § 5402(b)(4) (Supp. V 1981).

OPM's first merit pay fund formula was established in 1980 for use in fiscal year 1981. On September 8, 1981, however, the Acting Controller General for the General Accounting Office ("GAO") issued an opinion holding that OPM's formula violated the statute and was inconsistent with congressional intent. GAO objected to the OPM formula because it would have resulted in expenditures greater than those which would have been made under the GS system. In response to the GAO decision, OPM revised its formula for the merit pay fund.

On January 22, 1982, PMA and three federal employees filed a complaint challenging OPM's implementation of the merit pay system. PMA objected to OPM's decision to defer to GAO, and it advanced the following specific claims:

1. That OPM's implementation of the merit pay system in 1981 violated 5 U.S.C. § 5402(c)(2) because certain employees under the merit pay system received a basic pay rate less than they were receiving under the GS system;

2. that OPM acted arbitrarily and capriciously by deferring to the GAO opinion and modifying its merit pay formula;

3. that upon conversion to the merit pay system they were entitled to receive a portion of within-grade increases "earned" under the GS system;

4. that OPM's implementation of the less generous formula deprived them of property without due process;

5. that OPM's failure to implement the first formula constitutes a breach of an implied contract; and

6. that OPM failed to provide agencies with guidance and support necessary to establish merit pay performance and appraisal systems.

To remedy these alleged violations, appellants' complaint sought an award of monetary damages "in favor of each individual plaintiff and every PMA member who suffered improper salary losses." Complaint at 15. Appellants also sought declaratory and injunctive relief. In paragraph 2 of their Complaint, appellants alleged that the amount in controversy for any particular claimant was not in excess of $10,000. A good-faith allegation to this effect was necessary in order to avoid an out-right transfer of the action to the United States Claims Court pursuant to the Tucker Act. 28 U.S.C. §§ 1346, 1491 (1982). Plaintiffs have since buttressed this allegation by offering to waive recovery of damages in excess of $10,000. Appellants' Supplemental Brief on Jurisdictional Issues at 3 n. 4. Such waiver is sufficient to allow a district court to exercise its concurrent jurisdiction under the Tucker Act. *Stone v. United States,* 683 F.2d 449, 452 (D.C.Cir.1982); *VanderMolen v. Stetson,* 571 F.2d 617, 619 n. 2 (D.C.Cir. 1977).

Appellants clearly believed that the district court's jurisdiction over their claims for monetary damages rested on the Tucker Act. 28 U.S.C. § 1346(a)(2) (1982). Indeed, they explicitly cited section 1346(a)(2) as conferring jurisdiction in cases such as this in the jurisdictional statement in Part II of their Complaint. Complaint at 3. Appellants maintain to this day that the district court's jurisdiction over this action rested in part on the Tucker Act. Appellants' Supplemental Brief on Jurisdictional Issues at 3. We therefore assume that they have never sought more than $10,000 in damages on behalf of any one of their members.

On October 14, 1982, PMA moved for partial summary judgment and soon thereafter the United States countered by seeking dismissal or in the alternative summary judgment. On December 2, 1982, Judge Flannery granted the United States' motion for summary judgment on PMA's first five claims and for dismissal on the sixth. On January 28, 1983, PMA filed a timely notice of appeal in this court, even though the newly adopted Federal Courts Improvement Act of 1982 ("FCIA"), Pub.L. No. 97–164, 96 Stat. 37, had by then been in effect for nearly four months. That statute, which appears to govern this case, provides that the Federal Circuit now has "exclusive jurisdiction ... of an appeal from a final decision of a district court ... if the jurisdiction of that court was based, *in whole or in part,* on section 1346 of ... title [28]." 28 U.S.C. § 1295(a)(2) (1982) (emphasis added).

Appellants and appellees briefed and argued this appeal before us without addressing the jurisdictional issues, and, accordingly, on December 19, 1984, we raised those issues *sua sponte* and requested supplemental briefing. The supplemental briefs were filed on January 25, 1985, and we have given them due consideration.

## II.

■ At the outset, we hold that jurisdiction was proper in the district court under the Tucker Act. That Act grants the district courts jurisdiction over claims "not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress." 28 U.S.C. § 1346(a)(2). Here, appellants' claims were founded upon both the Constitution and Acts of Congress, their cause of action lay under the Back Pay Act, 5 U.S.C. § 5596 (1982), and it is uncontested that each individual claim was for $10,000 or less. We therefore agree with appellants that "they properly cited 28 U.S.C. § 1346(a)(2), the Tucker Act, in their Complaint (¶ 2) in support of their showing that the district court had jurisdiction over the action." Appellants' Supplemental Brief on Jurisdictional Issues at 3 (footnotes omitted).

■ We find unpersuasive, however, appellants' additional assertion that they could properly bring their appeal to this court. The Federal Courts Improvement Act clearly grants the Federal Circuit exclusive jurisdiction over appeals in cases such as this where the district court's jurisdiction was based in whole *or in part* on the Tucker Act. 28 U.S.C. § 1295(a)(2).[1] Here, appellants have correctly observed that the district court resolved their claims for money damages pursuant to its Tucker Act authority. Under the plain language of section 1295(a)(2), we thus have no choice but to conclude that PMA's appeal lies to the Federal Circuit.

Appellants dislike our reading of section 1295(a)(2) because it will require transfer of appeals to the Federal Circuit even in cases where a district court's jurisdiction was "primarily" based on some jurisdictional grant other than the Tucker Act. Yet, this conclusion is compelled by the plain

---

1. This part of the FCIA provides in full:

    § 1295. *Jurisdiction of the United States Court of Appeals for the Federal Circuit*
        (a) The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction—

    . . . .
        (2) of an appeal from a final decision of a district court of the United States ..., if the jurisdiction of that court was based, in whole or in part, on section 1346 of this title....
    28 U.S.C. § 1295(a)(2) (1982).

language of the FCIA which requires transfer whenever a district court's jurisdiction was based even "in part, on section 1346 of ... title [28]." 28 U.S.C. § 1295(a)(2). This conclusion also seems compelled by the legislative history to the FCIA which construes the "in whole or in part" language quite literally. For example, the Senate Report (which discusses language in section 1295(a)(1) that is analogous to the language in section 1295(a)(2)) emphasizes that "the Federal courts are courts of limited jurisdiction [and that] the basis for jurisdiction always must be affirmatively shown." S.Rep. No. 275, 97th Cong., 2d Sess. 18, *reprinted in* 1982 U.S. Code Cong. & Ad.News 11, 28. Based on the Senate Report, it would appear that the

regional courts of appeals should transfer cases to the Federal Circuit unless immaterial or frivolous Tucker Act claims have been added to a case for purposes of forum shopping and then severed by a district judge.[2] *See generally* S.Rep. No. 275, *supra*, at 19–20, 1982 U.S.Code Cong. & Ad. News 29–30.

Appellants dispute this conclusion and urge us to follow the approach adopted by the Seventh Circuit in *Squillacote v. United States*, 747 F.2d 432 (1984), *cert. denied*, — U.S. —, 105 S.Ct. 2021, 85 L.Ed.2d 302 (1985). In that case, the Seventh Circuit followed a functionalist approach and construed the FCIA in light of its purposes. According to that court, one of the primary purposes of the FCIA was to promote judi-

---

**2.** The relevant passages of the legislative history state as follows:

> Concern has been expressed that the Court of Appeals for the Federal Circuit will appropriate for itself elements of Federal law under its section 1295(1) grant of jurisdiction. It has been argued that a jurisdictional grant to the new court to consider appeals from a district court when jurisdiction was based, "in whole or in part," on section 1338 of title 23 [sic] (which confers on the district courts original jurisdiction of any civil action arising under an act of Congress relating to patents, plant variety protection, copyright and trademarks) is too broad and that specious patent claims will be tied, for example, to substantial antitrust claims in order to create jurisdiction in the Court of Appeals for the Federal Circuit. However, the statutory language in question requires that the district court have jurisdiction under 28 U.S.C. § 1338. This is a substantial requirement. Immaterial, inferential, and frivolous allegations of patent questions will not create jurisdiction in the lower court and therefore there will be no jurisdiction over these questions in the appellate court. As stated above, it is a canon of construction that courts strictly construe their jurisdiction. Therefore, the committee is confident that the present language will not pose undue difficulties.
>
> The Committee is concerned that the exclusive jurisdiction over patent claims of the new Federal Circuit not be manipulated. This measure is intended to alleviate the serious problems of forums shopping among the regional courts of appeals on patent claims by investing exclusive jurisdiction in one court of appeals. It is not intended to create forum shopping opportunities between the Federal Circuit and the regional courts of appeals on other claims.

> Thus, for example, mere joinder of a patent claim in a case whose gravamen is antitrust should not be permitted to avail a plaintiff of the jurisdiction of the Federal Circuit in avoidance of the traditional jurisdiction and governing legal interpretations of a regional court of appeals. Federal District judges are encouraged to use their authority under the Federal Rules of Civil Procedure, *see* Rules 13(i), 16, 20(b), 42(b), 54(b), to ensure the integrity of the jurisdiction of the federal court of appeals by separating final decisions on claims involving substantial antitrust issues from trivial patent claims, counterclaims, cross-claims, or third party claims raised to manipulate appellate jurisdiction.
>
> The Committee intends for the jurisdictional language to be construed in accordance with the objectives of the Act and these concerns. If, for example, a patent claim is manipulatively joined to an antitrust action but severed or dismissed before final decision of the antitrust claim, jurisdiction over the appeal of the antitrust claim should not be changed by this Act but should rest with the regional court of appeals.
>
> Further, the jurisdictional section of the CAFC should be read with section 301 of the proposed legislation. This latter section allows any Federal court which lacks jurisdiction over a matter to transfer the complaint or appeal to a proper court, in the same manner as if the complaint or appeal had been filed in that court in the first instance. This provision, therefore, will allow the CAFC to transfer cases to the proper circuit court, or vice versa.

S.Rep. No. 275, *supra*, at 19–20, 1982 U.S.Code Cong. & Ad.News 29–30.

cial efficiency and fairness by concentrating certain kinds of appeals in the Federal Circuit. In the Seventh Circuit's view, judicial efficiency and fairness are not always best promoted by following strictly the statutory scheme.

Accordingly, in *Squillacote*, the Seventh Circuit declined to follow the literal language of section 1295(a)(2). The court refused on rehearing to vacate a prior opinion in which it lacked jurisdiction because doing so would allegedly be inefficient and unfair. *Squillacote* differs from this case in that it had already been decided on the merits, a point the court found pivotal. We think *Squillacote's* approach inconsistent with the plain language of the statute. For that reason, we do not adopt it, and we certainly will not broaden it to cover this case. In any event, we believe section 1295(a)(2) is clear on its face and nowhere invites courts to retain jurisdiction over cases for reasons of efficiency. Moreover, as we have seen, the legislative history supports a literal construction of the statute. The legislative history clearly contemplates Federal Circuit jurisdiction over cases such as this, unless a frivolous Tucker Act claim has been added to a suit for

purposes of forum shopping and then severed at trial by the district judge.

Although section 1295(a)(2) is clear on its face, it has recently been the source of much confusion in our court. In several recent cases, litigants appear to have filed appeals in our court which should more properly have been filed in the Federal Circuit. *See Doe v. Department of Justice,* 753 F.2d 1092, 1119 (D.C.Cir.1985) (MacKinnon, J.; dissenting); *Riggsbee v. Bell,* No. 83–2242 (D.C.Cir. Jan. 28, 1985) (transferred); *Wilson v. Turnage,* 755 F.2d 967 (D.C.Cir.1985) (transferred). *See also National Juvenile Law Center v. Regnery,* 738 F.2d 455, 466–67 (D.C.Cir.1984). We urge litigants to be cognizant of the special jurisdictional statutes that govern claims for money damages against the United States. Those statutes are the source of our authority to resolve disputes, and they cannot be ignored for reasons of either fairness or efficiency.[3]

We have considered appellants' remaining arguments and have found them to be meritless.[4] Pursuant to 28 U.S.C. § 1631, we transfer the appeal of this action to the United States Court of Appeals for the Federal Circuit.[5]

---

**3.** Thus, we lack authority to ignore complicated jurisdictional issues in order to resolve a dispute more simply by deciding an easy question on the merits. We cannot reach the merits in a case—no matter how easy the issue—until we are satisfied that we have jurisdiction.

**4.** Appellants rely on the Ninth Circuit's opinion in Rowe v. United States, 633 F.2d 799 (9th Cir.1980), *cert. denied,* 451 U.S. 970, 101 S.Ct. 2047, 68 L.Ed.2d 349 (1981), which holds that the regional courts of appeals have jurisdiction to review claims of improper agency action even where those claims are joined with a Tucker Act damages action which should have been brought in the Court of Claims. Notwithstanding appellants' arguments, we find *Rowe* to be inapposite because: (1) unlike this case, *Rowe* did not involve a situation where the district court's jurisdiction was based in part on the Tucker Act; (2) unlike this case, *Rowe* was decided prior to the adoption of the FCIA which clearly has eliminated the jurisdiction of the regional courts of appeals in cases such as this; and (3) we are not persuaded that the *Rowe* analysis is fully consistent with our warning in Megapulse, Inc. v. Lewis, 672 F.2d 959, 967

(D.C.Cir.1982), that we will not allow plaintiffs to avoid the remedial restrictions of the Tucker Act by recasting cases that are essentially damages actions as requests for injunctive or declaratory relief.

Appellants also urge us to take jurisdiction over their promissory estoppel or contract claim pursuant to *Jablon v. United States,* 657 F.2d 1064 (9th Cir.1981). However, we need not decide whether to follow *Jablon* since even if that case was correctly decided, *see National Juvenile Law Center v. Regnery,* 738 F.2d at 466–67, we would still have to transfer the promissory estoppel claim to the Federal Circuit. This is the case because even if we had jurisdiction over the promissory estoppel claim in this case, we would still lack jurisdiction over PMA's appeal since that claim was joined in the district court to several claims for money damages brought under the Tucker Act. Such joinder triggers the "in whole or in part" language in § 1295(a)(2) and requires that we transfer the entire appeal to the Federal Circuit.

**5.** 28 U.S.C. § 1631 allows this court to transfer cases in the interest of justice to cure want of jurisdiction. The legislative history of § 1631

recognizes that this may be necessary "[b]ecause of the complexity of the federal court system and of special jurisdictional provisions." S.Rep. No. 275, *supra*, at 30, 1982 U.S.Code Cong. & Ad.News 40. In this case, transfer seems completely warranted both in the interest of justice and because of the complexity and novelty of the jurisdictional provisions at issue. The alternative to transfer here is dismissal which would work a significant hardship on appellants who would probably then be time barred from bringing an appeal to the Federal Circuit. In addition, we should note our disagreement with *Squillacote* to the extent it suggests that 28 U.S.C. § 1631 is not available to transfer cases after oral argument. 747 F.2d 432. Once again, the *Squillacote* position is inconsistent with the plain language of the statute and with the legislative history. *See also Riggsbee v. Bell* and *Wilson v. Turnage,* both of which were transferred by this court under § 1631 long after oral argument.