**CENTER FOR NUCLEAR RESPONSIBILITY, INC., et al., Appellants,**

v.

**UNITED STATES NUCLEAR REGULATORY COMMISSION, et al.**

**No. 84–5570.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 15, 1985.

Decided Jan. 21, 1986.

Martin H. Hodder, Miami, Fla., for appellants. William S. Jordan, III, Washington, D.C., entered an appearance for appellants.

Michael B. Blume, Atty., Nuclear Regulatory Com'n, Washington, D.C., with whom F. Henry Habicht, II, Asst. Atty. Gen., Washington, D.C., Herzel H.E. Plaine, Gen. Counsel, and William H. Briggs, Jr., Sol., Nuclear Regulatory Com'n, Washington, D.C., and Edward J. Shawaker and Dirk D. Snel, Attys., Dept. of Justice, Washington, D.C., were on the brief, for the federal appellees. E. Leo Slaggie, Atty., Nuclear Regulatory Com'n, Washington, D.C., and John A. Bryson, Atty., Dept. of Justice, Washington, D.C., entered appearances for the federal appellees.

Harold F. Reis, Washington, D.C., with whom Jill E. Grant, Washington, D.C., and Norman A. Coll, Miami, Fla., were on the brief, for appellee Florida Power & Light Co.

Before WRIGHT, WALD and GINSBURG, Circuit Judges.

Opinion for the court filed by Circuit Judge J. SKELLY WRIGHT.

Dissenting opinion filed by Circuit Judge GINSBURG.

J. SKELLY WRIGHT, Circuit Judge:

This case involves a challenge to a ruling of the Nuclear Regulatory Commission (NRC) that certain proposed amendments to a nuclear power plant's operating license present "no significant hazards considerations" and, therefore, that the amendments may be made immediately effective without a pre-determination hearing. Appellants challenged that ruling in the District Court, seeking injunctive and declaratory relief. The District Court, 586 F.Supp. 579, finding that it lacked jurisdiction, dismissed the suit. Well over three months later, appellants filed a notice of appeal. Because we find that appellants failed to file a notice of appeal within the jurisdictional time limits established by the Federal Rules of Appellate Procedure, we dismiss their appeal.

## I

Appellants in this case, the Center for Nuclear Responsibility and Ms. Joette Lorion, challenge two sets of amendments to the operating license for the Turkey Point Nuclear Power Plants. They filed suit in the District Court, alleging that the NRC had improperly denied them a hearing *before* the amendments became effective, and that the NRC had improperly approved the amendments without an environmental impact statement.

The proposed amendments included a new fuel design and reactor configuration, as well as certain modifications of the reactors' technical specifications. The NRC published a notice of the proposed amendments and allowed any interested parties to request a hearing within 30 days. Although appellants failed to file a timely request for a hearing on the first set of amendments, they did file a timely request for a hearing on the second set of amendments. In response to appellants' amendment requests, the NRC made a finding that the proposed amendments presented "no significant hazards considerations"

and, therefore, that no pre-determination hearing was required.[1] The NRC then scheduled a hearing to determine the merits of the proposed amendments.

Appellants argue that the NRC erred in finding that the proposed license amendments involved "no significant hazards considerations" and therefore that it did not have to hold a pre-determination hearing. Appellants argue that the amendments did raise serious safety issues and that a prior hearing was required under the Atomic Energy Act of 1954, 42 U.S.C. § 2011 *et seq.* (1982).

Appellants admittedly have had a difficult time finding a forum in which to raise their various concerns about the Turkey Point Nuclear Power Plants. They originally filed a petition in this court seeking review of an NRC refusal to institute enforcement proceedings against Florida Power & Light Company, the operator of the plants. This court dismissed that petition, finding that it did not properly have jurisdiction over the case. *Lorion v. NRC*, 712 F.2d 1472 (D.C.Cir.1983) (*Lorion I*), *rev'd*, —— U.S. ——, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985). While that case was on appeal to the Supreme Court, appellants filed the present action challenging the NRC's refusal to hold a prior hearing on these amendments. Reading this court's *Lorion I* decision as holding that jurisdiction for such a case is in the District Court, appellants filed the case in that court. Subsequently the Supreme Court reversed *Lorion I*, holding that this court properly had jurisdiction over the first case. *Florida Power & Light Co. v. Lorion*, —— U.S. ——, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985). Finally, the District Court dismissed the present case. Appellants understandably express some frustration over the situation.

## II

The District Court dismissed this case on April 26, 1984. The order was properly

---

**1.** The NRC may make an amendment to a nuclear plant's operating license immediately effective "upon a determination by the Commission that the amendment involves no significant hazards consideration, notwithstanding the pendency before the Commission of a request for a hearing from any person." 42 U.S.C. § 2239(a)(2)(A) (1982).

entered on the court's docket on April 27, 1984. The court issued its memorandum opinion supporting its order on May 4, 1984. While the memorandum opinion stated that it had dismissed the case for lack of subject-matter jurisdiction, its memorandum opinion actually reached the merits of appellants' National Environmental Policy Act (NEPA) claim, 42 U.S.C. § 4321 *et seq.* (1982). In response the NRC filed on May 14, 1984 a motion to clarify the opinion, proposing that the court amend its opinion by holding that it lacked jurisdiction over the NEPA claim as well. On June 12, 1984 the District Court granted the motion and amended its opinion accordingly. Appellants then filed their notice of appeal on August 13, 1984—within 60 days of the June 12th decision but after the 60-day period following the original entry of judgment.

Rule 4 of the Federal Rules of Appellate Procedure provides that a notice of appeal must be filed within 60 days after entry of the "judgment" of the District Court. Fed. R.App.P. 4(a)(1).[2] Rule 4(a)(4), however, provides that certain motions may toll the 60-day appeal period.[3] Our first task, then, is to determine when the District Court's judgment was entered. If the judgment was entered on April 27th or on May 4th, the notice of appeal was untimely and this court may only entertain the appeal if the NRC's motion tolled the appeal period.

## A.

■ Appellants contend that the judgment of the District Court was the memorandum opinion issued on May 4th, rather than the April 27th order. As a result, they argue, the NRC motion on May 14th was a timely motion under Federal Rule of Civil Procedure 59(e) to amend the judgment which tolled the appeal period.

Rule 4(a)(6) provides that a judgment is entered within the meaning of Rule 4(a) "when it is entered in compliance with Rules 58 and 79(a) of the Federal Rules of Civil Procedure." Fed.R.App.P. 4(a)(6).

Fed.R.Civ.P. 58 requires that the "judgment" of a District Court be set forth in a separate document. As the notes of the Advisory Committee on Rules explain, the purpose of this requirement is to remove any doubt about when the time for filing a notice of appeal begins to run. *See* Notes of Advisory Committee—1963 Amendments. *See also United States v. Indrelunas,* 411 U.S. 216, 220, 93 S.Ct. 1562, 1564, 36 L.Ed.2d 202 (1973) (purpose of the rule to remove uncertainty over appeal period); *Diamond v. McKenzie,* 770 F.2d

---

**2.** Rule 4(a)(1) provides, in part:

In a civil case in which an appeal is permitted by law as of right from a district court to a court of appeals the notice of appeal required by Rule 3 shall be filed with the clerk of the district court within 30 days after the date of entry of the judgment or order appealed from; but if the United States or an officer or agency thereof is a party, the notice of appeal may be filed by any party within 60 days after such entry. * * *

At oral argument appellants suggested that their appeal was within the 60-day appeal period from entry of the amended judgment on June 12, 1984. Thus they argued the court has jurisdiction since the 60-day window runs from the date of the entry of the "judgment *or order* appealed from" (emphasis added). We reject this argument. Appellants clearly seek to appeal the "judgment or order" dismissing their entire complaint—entered on April 27, 1984. The amended memorandum opinion altered the *ratio decidendi* of that judgment, but did not alter the judgment itself in any way. While the

new rationale may alter the preclusive effects of the judgment as a dismissal based on jurisdiction rather than on the merits, that effect is simply irrelevant to the issue at hand.

**3.** Rule 4(a)(4) provides:

If a timely motion under the Federal Rules of Civil Procedure is filed in the district court by any party: (i) for judgment under Rule 50(b); (ii) under Rule 52(b) to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted; (iii) under Rule 59 to alter or amend the judgment; or (iv) under Rule 59 for a new trial, the time for appeal for all parties shall run from the entry of the order denying a new trial or granting or denying any other such motion. A notice of appeal filed before the disposition of any of the above motions shall have no effect. A new notice of appeal must be filed within the prescribed time measured from the entry of the order disposing of the motion as provided above. No additional fees shall be required for such filing.

225, 230 n. 10 (D.C.Cir.1985) (same). As the Supreme Court noted in *Indrelunas*, this test is to be applied mechanically "in order to avoid new uncertainties as to the date on which a judgment is entered." 411 U.S. at 222, 93 S.Ct. at 1565. Rule 79(a) requires that the clerk of the court enter the judgment on the civil docket.

Thus, as this court recently noted in *Diamond v. McKenzie, supra,* these two rules establish two procedural requirements for entry of a judgment that triggers the running of the time for appeal: "first, a statement of the judgment on a separate document, and second, the entry of the judgment by the clerk on the civil docket." 770 F.2d at 228.

Applying this rule to the present case compels the conclusion that the judgment of the District Court was entered on April 27th. That order clearly satisfied both of the procedural requirements of Rule 4(a)(6). It stated the judgment of the District Court on a separate document and was entered by the clerk of the court on the civil docket. Consequently, appellants' notice of appeal, filed well beyond the 60-day appeal period, was untimely.

**B.**

■ As noted above, however, under Federal Rule of Appellate Procedure 4(a)(4), the 60-day appeal period is tolled when a party files certain motions. In this case, appellants argue, the NRC motion was a motion to amend the judgment under Rule 59(e) which, if filed within 10 days of the judgment, would toll the appeal period.[4] Appellees argue that the motion was a Rule 60(b)(1) motion to correct a technical legal error in the judgment.[5] Such motions do not toll the appeal period. Appellees argue in the alternative that even if the NRC motion were a Rule 59(e) motion, it was not a *timely* motion and therefore could not toll the appeal period.

Courts have split over whether errors in legal reasoning may be corrected by Rule 60(b)(1) motions.[6] The tension between Rule 59(e) and Rule 60(b) is generated by the competing goals of finality of judgments and rendering justice to particular litigants. Those courts that oppose the use of Rule 60(b) to correct legal errors[7] generally base their conclusion on two arguments. First, allowing substantive modifications to be made under Rule 60(b) eviscerates the 10-day time limitation imposed by Rule 59(e) on motions to "alter or amend the judgment." Moreover, use of Rule 60(b) to correct substantive legal errors indirectly extends the appeal period. Because an unsuccessful litigant could appeal the denial of his Rule 60(b) motion, he is thus allowed an extension of time during which to file an appeal and to gain review of the District Court's judgment.[8]

**4.** Rule 59(e) provides:

> A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment.

**5.** Rule 60(b) provides, in part:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect[.] * * * The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. * * *

The NRC motion was labeled as a "Motion to Clarify Opinion" and did not refer to either rule. Similarly, the District Court, in ruling on the motion, failed to determine whether the motion was a Rule 60(b) motion or a Rule 59(e) motion.

**6.** *See generally* Note, 83 Mich.L.Rev. 1571 (1985); Note, 43 Notre Dame Law. 98 (1967).

**7.** *See Elias v. Ford Motor Co.,* 734 F.2d 463, 467 (1st Cir.1984) (errors of law cannot be corrected by Rule 60(b)(1) motions); *McKnight v. United States Steel Corp.,* 726 F.2d 333, 338 (7th Cir. 1984) (Rule 60(b)(1) not intended to allow correction of legal errors). *Cf. Martinez-McBean v. Government of the Virgin Islands,* 562 F.2d 908, 912 & n. 4 (3d Cir.1977) (dicta) (suggesting that legal error alone cannot be corrected by a Rule 60(b)(1) motion).

**8.** This is true, of course, only to the extent that the alleged judicial error involved in the appeal from the Rule 60(b) decision is the same error that could have been raised on appeal from the original judgment.

*McKnight v. United States Steel Corp.,* 726 F.2d 333, 338 (7th Cir.1984); *Peacock v. Board of School Comm'rs,* 721 F.2d 210, 214 (7th Cir.1983).

Proponents of the use of Rule 60(b),[9] however, often argue that allowing a court to correct its own legal errors has the beneficial effect of eliminating needless appeals. *Gila River Ranch, Inc. v. United States,* 368 F.2d 354, 375 (9th Cir.1966); 7 J. MOORE, FEDERAL PRACTICE ¶ 60.22[3] at 186 (2d ed. 1983). This benefit may be illusory, however, given that the litigant who was originally successful is likely to appeal the modificaton of the original judgment.

This court addressed the issue in *D.C. Federation of Civic Ass'ns v. Volpe,* 520 F.2d 451 (D.C.Cir.1975). In that case the appellant had moved under Rule 60(b)(1) to amend the court's attorney fee award in light of a post-judgment change in the law of the circuit. The appellant made the motion 13 days after the judgment, but before the expiration of the appeal period. Anticipating a favorable ruling on its motion, appellant allowed the appeal period to expire. To its chagrin, the court ruled against it. On appeal this court held that the District Court erred in failing to amend its decision to reflect the change in the law of the circuit. 520 F.2d at 453.

Although *Volpe* could be read as adopting the more liberal interpretation of Rule 60(b)(1), allowing correction of substantive legal errors during the appeal period, that case involved the unique situation where the controlling law of the circuit had changed between the time of the judgment and the time of the motion. Whether we would extend this rule to allow corrections of substantive legal errors where no such change in the law of the circuit has occurred we need not decide today. For either way we resolve the issue, appellants lose.

On the one hand, if the NRC motion were a Rule 60(b)(1) motion under the *Volpe* reasoning, then clearly appellants' appeal was untimely since such motions do not toll the appeal period. On the other hand, if we limit *Volpe* to when the governing law changes during the appeal period, and therefore hold that the NRC motion was a Rule 59(e) motion, the appeal would nonetheless be untimely. Rule 59(e) motions must be made within 10 days after the judgment of the District Court in order to toll the appeal period. *See* Fed.R.App.P. 4(a)(4) ("[i]f a *timely* motion is filed under * * * [Rule] 59 * * *") (emphasis added). Because the NRC motion was made 17 days after the entry of judgment, even if it were a Rule 59(e) motion it is clear that the motion was untimely. Therefore, because untimely Rule 59(e) motions do not toll the appeal period, the appeal would again be untimely.

Thus appellants appear to rest in an awkward position: either the motion was a Rule 60(b)(1) motion, in which case the appeal period was not tolled, or the motion was an untimely Rule 59(e) motion, and again the appeal period was not tolled.

## C.

■ Alternatively, appellants argue that regardless of the true nature of the motion

---

**9.** *See Morris v. Adams-Mills Corp.,* 758 F.2d 1352, 1357–59 (10th Cir.1985) (suggesting that legal errors could be corrected by Rule 60(b)(1) motions if timely notice of appeal is filed); *Barrier v. Beaver,* 712 F.2d 231, 234 (6th Cir.1983) (legal errors may be corrected under Rule 60(b)(1) if motion is made within appeal period); *Liberty Mutual Ins. Co. v. Equal Employment Opportunity Comm'n,* 691 F.2d 438, 441 (9th Cir.1982) (errors of law may be corrected under Rule 60(b)); *Parks v. U.S. Life & Credit Corp.,* 677 F.2d 838, 840–41 (11th Cir.1982) (court may correct judgment when controlling law has changed under Rule 60(b)(1) motion even if filed after the appeal period, but only if a timely appeal has been filed); *Fox v. Brewer,* 620 F.2d 177, 180 (8th Cir.1980) (court may grant relief under Rule 60(b)(1) for "judicial inadvertence" when motion is filed within appeal period); *In re Texlon Corp.,* 596 F.2d 1092, 1100 & n. 7 (2d Cir.1979) (suggesting that although some judicial errors may be corrected by Rule 60(b)(1) motions, motions must be made within appeal period); *Lairsey v. Advance Abrasives Co.,* 542 F.2d 928, 930 (5th Cir.1976) (court may correct judgment when controlling law has changed by Rule 60(b)(1) motion even if filed after the appeal period, but only if a timely appeal has been filed); *D.C. Federation of Civic Ass'ns v. Volpe,* 520 F.2d 451, 453 (D.C.Cir. 1975) (Rule 60(b)(1) may be used to correct judgment when controlling law has changed).

the fact that the District Court considered the motion on the merits allowed them to file the notice of appeal beyond the 60-day time period.

Although the Supreme Court has held that appellate time limits are jurisdictional,[10] *see Browder v. Director, Dep't of Corrections of Illinois,* 434 U.S. 257, 98 S.Ct. 556, 54 L.Ed.2d 521 (1978), the Court has recognized a narrow exception where the appellant is misled into delaying the filing of his notice by some action of the District Court.[11] Appellants argue that they were misled by the District Court's consideration of the NRC's motion on the merits. They argue that because the court reached the merits of the NRC motion, rather than dismissing it as untimely, they were entitled to believe that the court considered the motion as a timely Rule 59(e) motion. We reject this argument.

Concededly, the law governing the type of motion made in the present case is, at least arguably, unsettled. Under such circumstances this court has found it reasonable for a litigant to conclude that the court is treating the motion as a Rule 59(e) motion.[12] *See Webb v. Dep't of Health & Human Services,* 696 F.2d 101 (D.C.Cir. 1982). Even if appellants could reasonably have concluded that the motion was a Rule 59(e) motion, however, it would only render the NRC's motion an *untimely* Rule 59(e) motion. Rule 59(e) motions are expressly limited to the 10-day period following entry of judgment, and the District Court simply has no power to extend that time limitation.[13] Fed.R.App.P. 4(a)(5). And parties

---

**10.** Because they are established by the Federal Rules of Civil Procedure, the time limits established by Rule 4 are not, strictly speaking, jurisdictional. The rules, of course, cannot extend or limit the jurisdiction of the Courts of Appeals. As Professor Moore has noted, however, "[T]he courts of appeals must obey the mandatory provisions of the rules whether they are referred to as jurisdictional, 'mandatory and jurisdictional', or merely mandatory." 9 J. MOORE, FEDERAL PRACTICE ¶ 204.02[2] at 4–16 (2d ed. 1983).

**11.** *See Thompson v. I & NS,* 375 U.S. 384, 385, 84 S.Ct. 397, 11 L.Ed.2d 404 (1964) (District Court assured appellant that his new trial motion was filed in ample time); *Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc.,* 371 U.S. 215, 217, 83 S.Ct. 283, 285, 9 L.Ed.2d 261 (1962) (untimely motion tolled the appeal period when District Court assured appellant that motion was timely). *See also Myers v. Stephenson,* 748 F.2d 202, 205 (4th Cir.1984) (dicta) (District Court assurance that untimely appeal was nonetheless permissible because of excusable neglect, when *pro se* appellant could have filed a motion for extension of time, misled appellant); *Willis v. Newsome,* 747 F.2d 605, 606 (11th Cir. 1984) (untimely appeal allowed where litigant relied on express representation by court clerk that notice of appeal would be stamped with date it was mailed, rather than date received); *Aviation Enterprises, Inc. v. Orr,* 716 F.2d 1403, 1406 n. 25 (D.C.Cir.1983) (where District Court vacated its initial order and issued superseding order, even if no new appeal period began, reliance by litigants would toll initial appeal period); *Webb v. Dep't of Health & Human Services,* 696 F.2d 101, 106 (D.C.Cir.1982) (untimely appeal allowed where confusion over whether motion tolled appeal period misled liti-

gants); *Carlile v. South Routt School District,* 652 F.2d 981, 986 (10th Cir.1981) ("unique circumstances" exist where District Court entered explicit order tolling time during which appellant could file complaint); *Needham v. White Laboratories, Inc.,* 639 F.2d 394, 398 (7th Cir.) (appellants' reliance on District Court's specific assurances that motion had tolled time for filing notice of appeal allowed court to consider appeal despite untimely notice), *cert. denied,* 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 237 (1981); *Hernandez-Rivera v. I & NS,* 630 F.2d 1352, 1355 (9th Cir.1980) (untimely appeal allowed where immigration judge explicitly extended appeal period, even though he was without power to do so).

**12.** In *Webb* appellant argued that his motion for attorney fees tolled the time for an appeal. Although an intervening Supreme Court holding made clear that such a motion was not a Rule 59(e) motion, this court thought it important that all of the parties *and the District Court* seemed to treat the motion as a Rule 59(e) motion at the time. Thus the court concluded that even though appellant "did not rely on an express statement by the district court that the motion was a Rule 59(e) motion, he had good reason to believe that the court was treating it as such, given the unsettled state of the law and the court's willingness to grant the motion." 696 F.2d at 106.

**13.** Appellants also argue that they were misled by the statement in the District Court's order dismissing the case that the basis for the dismissal could be gleaned from the "accompanying Memorandum Opinion." Consequently, they argue, they were entitled to believe that the court considered the judgment to have been issued on

can only reasonably rely on *timely* Rule 59(e) motions as a basis for delaying the filing of their notice of appeal.

The mere fact that the District Court took the motion under advisement cannot reasonably mislead a litigant as to the timeliness of the motion. The parties have no right to an immediate decision as to the timeliness of a motion. *See Alvestad v. Monsanto Co.,* 671 F.2d 908, 911 n. 1 (5th Cir.1982) (District Court's mere willingness to entertain a tardy motion for a new trial does not relieve the prospective appellant from responsibility for filing a timely notice). *Cf. Parisie v. Greer,* 705 F.2d 882, 888 (7th Cir.1983) (*en banc*) (Wood, J., dissenting). Indeed, as in the present case, a decision on timeliness often necessitates a decision on what type of motion is involved.

*Parisie v. Greer,* 685 F.2d 1016 (7th Cir. 1982), *vacated,* 705 F.2d 882 (7th Cir.) (*en banc*), *cert. denied,* 464 U.S. 950, 104 S.Ct. 366, 78 L.Ed.2d 326, *and* 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 261 (1983), and *Pierre v. Jordan,* 333 F.2d 951 (9th Cir.), *cert. denied,* 379 U.S. 974, 85 S.Ct. 664, 13 L.Ed.2d 565 (1964), are not to the contrary.

In *Parisie* the appellant, a prisoner acting *pro se,* filed a Rule 59 motion beyond the 10-day time limitation established by Rule 59. 685 F.2d at 1017. Although the motion was technically untimely, a panel of the Seventh Circuit held that, because of appellant's unique situation and because the state failed to object to the timeliness of the motion, appellant was reasonably misled by the District Court's consideration of the motion on the merits. *Id.* at 1018. In reaching this conclusion the court relied heavily upon appellant's *pro se* status. *See id.* at 1017 (noting the "special latitude given pro se litigants"). Upon reconsideration *en banc,* the Seventh Circuit vacated the panel opinion and, because a majority of the court believed that the court had jurisdiction over the appeal, affirmed the District Court's denial of the motion on the merits. *See* 705 F.2d at 883. The only three judges of the full court that thought the *Harris Truck Lines* exception applicable also considered appellant's *pro se* status important. *Id.* at 898 (Swygert, J., with Cummings, C.J., and Cudahy, J., concurring in part).

Similarly, *Pierre* involved a litigant acting *pro se* who filed an untimely Rule 59(e) motion. 333 F.2d at 955. The court, noting that Mrs. Pierre was a layperson, held that because the lower court reached the merits of her motion, she was "entitled to conclude that the district court regarded the motion as timely * * *." *Id.*

In both cases, then, the court bent the rules, giving "special latitude" to *pro se* litigants. Neither case stands for the proposition that this court should similarly bend the rules merely because appellants' counsel erred. It is hardly unreasonable to impute knowledge of simple, mechanical procedural rules to attorneys who, indeed, have a professional obligation to be aware of them. *See Reed v. Kroger Co.,* 478 F.2d 1268, 1272 (Temp.Emer.Ct.App.1973) (*per curiam*). In a very real sense, the rules are the tools of the trade. Allowing appellants to evade compliance with these rules blunts the tools fashioned to govern procedure in our courts, engenders confusion in the lower courts, and could produce mischievous results in the long run. *Cf. Thompson v. I & NS,* 375 U.S. 384, 390, 84 S.Ct. 397, 11 L.Ed.2d 404 (1963) (Clark, J., with Harlan, Stewart, and White, J.J., dissenting).

For the foregoing reasons we conclude that appellants' argument should be reject-

---

May 4 and the NRC's motion on May 14 was therefore timely. Appellants' reply brief at 8. As the discussion above indicates, however, Rule 58 explicitly commands that the "judgment" be set forth in a document separate from the court's opinion. Fed.R.Civ.P. 58. Even if the rule were not so clear, however, the judgment in this case itself indicated that the forth-coming document would be the "Memorandum Opinion," rather than the court's judgment. Thus, because of the clear command of Rule 58 and the explicit mention of a forthcoming *opinion,* rather than a judgment, we find that the District Court's action was not "misleading" within the meaning of the *Harris Truck Lines* exception.

ed.[14] Therefore, because this appeal is untimely, this court has no jurisdiction to entertain the merits of the appeal.[15] *Browder v. Director, Dep't of Corrections of Illinois, supra,* 434 U.S. 257, 98 S.Ct. 556.

*Dismissed.*

GINSBURG, Circuit Judge, dissenting:

The allocation of judicial business in our complex federal court system can be problematic. For example, Congress sometimes allocates subject matter competence (jurisdiction) with less than ideal clarity; occasionally, legislation is opaque in instructing which federal tribunal is *the* proper—or *a* proper—forum for the first court airing of, or an appeal in, a particular kind of federal case. *Compare Hohri v. United States,* 782 F.2d 227, 239–41 (D.C. Cir.1985), *with id.* at 944–946 (dissenting opinion) (divided views on "plain meaning" of 28 U.S.C. § 1295(a)(2) (1982)). When administrative action is in question, as in the instant case, the governing statute may fail to say with precision whether judicial review should initially occur in a district court, or directly in a court of appeals. The matter at hand pointedly illustrates these difficulties, as did our previous encounter with these appellants, *Lorion v. NRC,* 712 F.2d 1472 (D.C.Cir.1983) (holding that judicial review of Nuclear Regulatory Commission decision at issue must first occur in district court), *rev'd sub nom. Florida Power & Light Co. v. Lorion,* —— U.S. ——, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985) (finding

that court of appeals, not district court, is proper forum for judicial review).

Appellants' confusion arose in large measure from the timing of the instant suit in relation to this court's opinion in the *Lorion* case. Contesting nuclear plant license amendments, appellants filed this action in the district court at the end of 1983, after we held that *Lorion* belonged in that forum, but before the Supreme Court reversed our decision. The district court dismissed this action some months later, holding that the plea for judicial review should have been filed in the first instance in this court. As the majority acknowledges, "[a]ppellants admittedly have had a difficult time finding a forum in which to raise their various concerns...." *See* maj. op. at 937.

In the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, § 301(a), 96 Stat. 25, 55 (1982), Congress provided a transfer remedy for plaintiffs who experience this kind of confusion. Congress created 28 U.S.C. § 1631 (1982), which controls the action of a federal court when it finds that it lacks jurisdiction but that another federal court has authority to hear the case. In such an instance, the first federal court must transfer the case to the proper court, if transfer is in the interest of justice.

Section 1631 reads:

Whenever a civil action is filed in a [federal] court ... or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that

---

**14.** Our dissenting colleague finds our judgment strange, noting that this court is alone vested with subject-matter competence to review the NRC's action in this case. *See* dissenting opinion at 945. Yet procedural rules, such as statutes of limitations, routinely bar access to judicial relief for litigants whose cause is just and for whom no alternative forum is available.

Although we would certainly be willing to consider appellants' contentions had they filed a timely appeal and had erred merely in supplying an "appropriate label," appellants filed no appeal at all during the appeal period. Similarly, the NRC motion could not toll the appeal period *regardless* of its label. *See* Part II–B *supra.*

**15.** The dissent suggests that this court should simply ignore the lack of a timely notice of appeal and consider the case on the merits. Because the case would have been properly before the court had the District Court not erred in its analysis under § 1631, the dissent reasons, the court should proceed to the merits of the case as if the District Court had not erred. The problem with the dissent's analysis, of course, is that this court has no power under § 1631 to correct the District Court's error in failing to transfer the case. That this court has appellate jurisdiction over the District Court does not compel the opposite conclusion, given that, as noted above, appellants' have failed to invoke properly our appellate jurisdiction.

there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other [federal] court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

The section is entitled "Transfer to cure want of jurisdiction"; its prescription suits this case to a T. Section 1631 serves to "aid litigants who were confused about the proper forum for review." *American Beef Packers, Inc. v. ICC,* 711 F.2d 388, 390 (D.C.Cir.1983) (transferring to the district court a review proceeding filed in this court). The appellants here surely fit the *American Beef Packers* description. Encountering our decision in *Lorion, supra,* they were understandably confused about the proper forum for their challenge to the Commission's action.

Section 1631, however, was still new at the time this case was dismissed and the section apparently was not brought to the attention of the district court.[1] Had the district court been aware of section 1631 and followed its directions, the case would have arrived here by transfer rather than on appeal from the district court's dismissal, and there would have been no timeliness question. We would simply have applied section 1631's instruction to proceed "as if [the case] had been filed [in this court] on the date [in 1983] upon which it was actually filed in [the district court]." 28 U.S.C. § 1631 (1982).

This court and others have transferred cases under section 1631 without reference to any cue in the form of a party's motion.

*See American Beef Packers, supra; Lorion,* 712 F.2d at 1479; *United States v. John C. Grimberg Co.,* 702 F.2d 1362 (Fed. Cir.1983). A motion is unnecessary because of the mandatory cast of section 1631's instructions. In this regard, section 1631 has a very different office than does 28 U.S.C. § 1406(a), (b) (1982) (cure or waiver of venue defects). It is the parties' responsibility to raise and argue over venue if they will; the court may disregard that highly waivable matter if the parties do not choose to contest it. *See id.* § 1406(b); 15 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3826 (1976). On the other hand, it is the court's responsibility to consider subject matter competence even if the parties fail to raise the issue. *See* FED.R.CIV.P. 12(h)(3); 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1393 (1969 & Supp.1985). Part of the court's responsibility, with section 1631 on the books, is to determine whether "[t]ransfer to cure [its] want of [subject matter] jurisdiction" would best promote "the interest of justice."[2]

We have recently reminded the district courts of this responsibility in *Ingersoll-Rand Co. v. United States,* 780 F.2d 74, 80, (D.C.Cir.1985). In that case, we agreed with the district court that an action brought there belonged in the Claims Court. The district court had dismissed the action. We remanded for the limited purpose of allowing the district court to consider transferring the case to the Court of Claims. Judge McGowan, writing for the panel, explained:

> Under 28 U.S.C. § 1631 (1982), where a court finds that it lacks jurisdiction, it must transfer such action to the proper court, if such transfer is in the interest of justice. Transfer may be appropriate

---

**1.** This court too, when the Federal Courts Improvement Act was new, sometimes did not advert immediately to its teachings. *See Wilson v. Turnage,* 755 F.2d 967 (D.C.Cir.1985) (vacating court's prior opinion and belatedly transferring case to Federal Circuit in accordance with 28 U.S.C. § 1295(a)(2) (1982)); *Professional Managers' Ass'n v. United States,* 761 F.2d 740, 745 (D.C.Cir.1985) (noting that "section 1295(a)(2)

... has recently been the source of much confusion in our court").

**2.** The fact that the provision, in contrast to 28 U.S.C. § 1406(a) (1982), does not even mention dismissal as an alternative to transfer suggests that Congress expected transfer to be the rule in cases to which § 1631 applies.

in this case. The parties, however, have not addressed this issue on appeal, and apparently did not do so before the district court. We therefore remand this case for the limited purpose of allowing the district court to consider whether the case should be transferred to the Claims Court.

*Id.* (footnote omitted).

*Ingersoll-Rand* dealt with the prospect of a lateral transfer outside the circuit, from district court to Claims Court. In the instant matter, this very court is the proper forum for the proceeding erroneously filed in our district court. That fact should make the case for transfer all the more compelling. This court's qualification as *the* proper forum also suggests the appropriateness of our rendering the transfer decision here and now. It would be a curious procedure indeed to remand this aging matter to the district court so that a district judge could decide whether or not to ticket as a "transfer" the parties' return trip here. Nor is such a convoluted procedure necessary to a fair decision: all the considerations relevant to "the interest of justice" appear from the record to be within our plain view. *See Brock v. L.R. Willson & Sons, Inc.*, 773 F.2d 1377, 1388 (D.C.Cir.1985) (holding that remand is unnecessary when only one conclusion is supportable on the record). To assure that we have given that interest its full due, we could invite the Commission to show cause, if any there be, why we should not deem the case transferred and therefore proceed to a decision on the merits.

In sum, I cannot join my colleagues' decision to affirm for want of jurisdiction and thereby cut off judicial review.[3] I find that judgment strange, for we are the court, indeed the only lower court, that has subject matter competence in this case.[4] We should not turn away litigants who were understandably "confused about the proper forum for review," *American Beef Packers, supra* at 390, simply because the paper that brought them here lacked the appropriate label.

---

**3.** Even if I could agree that we should blind ourselves to § 1631, I would question the majority's decision. The complainants came to the district court, at least in part because they believed our decision in *Lorion, supra,* required them to go there. Then the district court disassociated itself from the case in pieces, first issuing its dismissal judgment on April 26, 1984, next—eight days later—filing a memorandum explaining the dismissal, thereafter entertaining the Commission's motion to clarify ten days after that, and finally issuing a decision on the motion more than six weeks after its initial judgment. The district court's continuing association with the case understandably left the plaintiffs uncertain as to the precise point at which the decision became final. In similar circumstances, the Ninth Circuit sensibly explained why it refused to dismiss an appeal as untimely. *See Pierre v. Jordan,* 333 F.2d 951, 955 (9th Cir.), *cert. denied,* 379 U.S. 974, 85 S.Ct. 664, 13 L.Ed.2d 565 (1964) (holding that the plaintiff "was entitled to conclude that the district court regarded the motion as timely.... This being the case, unique circumstances exist requiring that her motion be regarded as ... effectively terminating the running of the time for appeal.").

**4.** It is ironic that the only court with jurisdiction (subject matter competence) nonetheless dismisses for want of jurisdiction. The explanation, though ironical, is apparent. Time limits for filing an appeal have been characterized as "mandatory and jurisdictional." *See Browder v. Director, Department of Corrections of Illinois,* 434 U.S. 257, 264, 98 S.Ct. 556, 561, 54 L.Ed.2d 521 (1978).

> As this court has had occasion to comment:
> The word jurisdiction is popular in the lexicon of lawyers and judges, so popular that its chameleon quality sometimes slips from our grasp. But cases like the one before us force attention to the manifold settings in which we employ the term, and remind us that its meaning frequently can be determined only from context.

*United States v. Kember,* 648 F.2d 1354, 1357–58 (D.C.Cir.1980). This is not the place for an essay on our profligate use of the term "jurisdiction." But when we employ the word to mean many things—from the absence of a constitutional grant of judicial power to a statutory limit on time to appeal—we ought to bear firmly in mind that

> the tendency to assume that a word which appears in two or more legal rules, and so in connection with more than one purpose, has and should have precisely the same scope in all of them, runs all through legal discussions. It has all the tenacity of original sin and must constantly be guarded against.

Cook, *"Substance" and "Procedure" in the Conflict of Laws,* 42 YALE L.J. 333, 337 (1933).

The mechanical analysis offered by the court does not persuade me that we lack power to hear this case. On the contrary, the case belongs in this forum, we should treat it as having been transferred here as section 1631 requires, and we should accord these litigants their long-sought day in court. I dissent.