Michael R. WARD, Plaintiff,

v.

William E. KENNARD, Chairman, United States Federal Communication Commission, Defendant.

CIV.A. No. 00–0419(RMU).

United States District Court, District of Columbia.

Jan. 24, 2001.

Michael R. Ward, Oxon Hill, MD, pro se.

Scott Sutherland Harris, U.S. Attorney's Office, Washington, DC, for defendant.

### MEMORANDUM OPINION

URBINA, District Judge.

#### DENYING THE PLAINTIFF'S MOTION FOR RECONSIDERATION

#### I. INTRODUCTION

This matter comes before the court on the plaintiff's motion for reconsideration of this court's December 12, 2000 Memorandum Opinion ("Memorandum Opinion"), which granted the defendant's motion for summary judgment. The *pro se* plaintiff, Michael R. Ward ("the plaintiff" or "Mr. Ward"), brought this suit claiming numerous civil rights violations by the defendant, William E. Kennard ("the defendant"), Chairman of the United States Federal Communications Commission, named in his official capacity. The plaintiff now asks the court to reconsider its Memorandum Opinion. For the reasons that follow, the court will deny the plaintiff's motion.

#### II. BACKGROUND

*Pro se* plaintiff Michael R. Ward "had worked as a writer-editor and at the GS–12 level for several years." Compl. at 2.[1] In his complaint, Mr. Ward asserted that he had "competitive civil service status" and that he was "a preference eligible candidate, a 10-point compensably [sic] disabled veteran with a service-connected disability rated at 30 percent or more by the Department of Veterans Affairs." *Id.*

From July 11, 1994 through August 12, 1994, the FCC posted Vacancy Announcement Number ("VAN") 94–128, seeking applications from "all sources" to fill the posi-

---

1. Since the complaint provided only a brief statement of facts, the court could not ascertain several details. For example, although the plaintiff said that he worked for several years at the GS–12 level, he did not say where he worked. Exhibit 2 of the plaintiff's motion for partial summary judgment is a "Notification of Personnel Action," which seems to indicate (although the print is rather faint) that the plaintiff resigned from his GS–12 level job as a Public Affairs Specialist for the Department of the Navy in 1991 for "personal" reasons.

tion of writer-editor, grade GS–13, in its Office of Public Affairs ("OPA"). *See* Def.'s Mot. for Summ. J. at 3. Mr. Ward applied for the job, but the FCC did not select him for the position. *See* Compl. at 2.

Mr. Ward alleged that the FCC's rejection of his application violated his constitutional right to due process and amounted to employment discrimination on the basis of his sex, age, and disability. In addition, he claimed that by denying his application, the FCC violated the merit-system principles embodied in 5 U.S.C. § 2301, and committed personnel practices prohibited by 5 U.S.C. § 2302. *See generally* Compl. Mr. Ward brought his claims under the Fifth and Fourteenth Amendments to the Constitution, 5 U.S.C. §§ 1302, 2108, 2301, 2302, 3309, 3313, 3314, 3317, and 1318, the Rehabilitation Act of 1973 (§ 501, 29 U.S.C. § 791), the Age Discrimination in Employment Act of 1967 (29 U.S.C. § 633(a)) ("ADEA"), Title 38 U.S.C. § 4214, Title 42 U.S.C. § 2000(e) *et seq.* ("Title VII"), and 42 U.S.C. § 1981(a). *See* Compl. at 2–15.

Mr. Ward charged that because he had competitive civil service status, was preference eligible and had a disability rated at more than 30 percent, the FCC's selection of another person for the writer-editor position violated both merit-system principles and government personnel practices. Specifically, the plaintiff alleged that the FCC failed to follow proper selection procedures in assessing applicants, intentionally excluded his application from consideration, and manipulated the selection process to select the applicant of its choice. *See generally* Compl. Moreover, Mr. Ward asserted that the defendant had committed all these acts with the intent to discriminate against him on the basis of his age, sex, and disability. *See id.*

As noted above, on December 12, 2000, the court granted the defendant's motion for summary judgment and denied the plaintiff's motion for partial summary judgment. The plaintiff now asks the court to reconsider that decision.

## III. DISCUSSION

### A. The Plaintiff's Motion for Reconsideration Does Not Constitute a Legitimate Rule 60(b) Motion

The plaintiff brings this motion for reconsideration without explicitly stating which Federal Rule of Civil Procedure he seeks to employ. In short, he fails to make clear whether he intended to file a Rule 59(e) motion [2] or a Rule 60(b) motion.[3] The Federal Rules of Civil Procedure help answer this question. Since the plaintiff filed his motion for reconsideration more than 10 days after the court issued its December 12, 2000 Memorandum Opinion [4], Federal Rule of Civil Procedure 6(b) does not allow the court to treat the motion as a Rule 59(e) motion. *See* Fed.R.Civ.P. 6(b) (the court "may not extend the time for taking any action under Rules 50(b) and (c)(2), 52(b), 59(b), (d) and (e), and 60(b). . . ."). Accordingly, since the court cannot construe the plaintiff's motion as a Rule 59(e) motion, the court will construe it as a Rule 60(b) motion for reconsideration.

■ In his motion, the plaintiff does not raise allegations of fraud, inadvertence, excusable neglect, newly discovered evidence,

2. Federal Rule of Civil Procedure 59(e), entitled "Motion to Alter or Amend Judgment," provides that: "Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment."

3. Federal Rule of Civil Procedure 60(b), entitled "Relief from Judgment or Order: Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc.," provides, in pertinent part, that:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a relief judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable

neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . ., misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it has been based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

4. The plaintiff filed his motion for reconsideration on January 9, 2001.

surprise, or misconduct that would qualify his motion as a legitimate Rule 60(b) motion. *See* FED.R.CIV.P. 60(b). After reviewing the motion, the court can only presume that the plaintiff intends to assert that the court made various errors in its legal reasoning in formulating its Memorandum Opinion. For example, the plaintiff's motion states, "the Court misconstrues and contorts the substance of the plaintiff's sex and age discrimination claims to his detriment...." Mot. for Recon. at 1–2.

The federal courts of appeal are split over whether parties can use Rule 60(b) motions to assert that the court made an error of legal reasoning. A majority of the circuits that have addressed the question state that parties cannot do so. For example, the First, Third, Fourth, Seventh, and Eighth Circuits oppose allowing parties to use Rule 60(b) motions "to correct legal errors." *See, e.g., Elias v. Ford Motor Co.,* 734 F.2d 463, 467 (1st Cir.1984) (Rule 60(b) cannot alone fix errors of law); *Smith v. Evans,* 853 F.2d 155, 158 (3d Cir.1988) (Rule 60(b) cannot be used when a motion solely alleges legal error and reiterates the original claims); *McKnight v. U.S. Steel Corp.,* 726 F.2d 333 (7th Cir.1984) (Rule 60(b)'s purpose was not to correct legal errors); *Spinar v. South Dakota Board of Regents,* 796 F.2d 1060, 1062 (8th Cir.1986) ("This court has maintained consistently that 'Rule 60(b) was not intended as a substitute for a direct appeal from an erroneous judgment.'" (quoting *Hartman v. Lauchli,* 304 F.2d 431, 432 (8th Cir.1962))). The Fourth Circuit has held that "Rule 60(b) does not authorize a motion merely for reconsideration of a legal issue.... Where the motion is nothing more than a request that the district court change its mind ... it is not authorized by Rule 60(b)." *United States v. Williams,* 674 F.2d 310, 312 (4th Cir.1982). These circuits have emphasized that unless extreme circumstances exist, the movant has other options to challenge the decision, notably, the right to appeal. *See Center for Nuclear Responsibility v. United States Nuclear Reg.,* 781 F.2d 935, 940 n. 8 (D.C.Cir. 1986); *McKnight,* 726 F.2d at 337 ("The plaintiff may not, however, use Rule 60(b) to correct alleged errors of law by the district court which may have been raised by filing a timely appeal....").

The Second Circuit has adopted a slightly more permissive standard, cautiously allowing application of Rule 60(b) only "with very special facts." *Tarkington v. United States Lines Co.,* 222 F.2d 358, 360 (2d Cir.1955) (allowing Rule 60(b) motion when the Supreme Court overturned case law relied on in the district court's judgment). On the most permissive end of the spectrum, the Ninth Circuit does allow parties to employ Rule 60(b) motions to challenge alleged legal errors. *See Liberty Mutual Ins. Co. v. EEOC,* 691 F.2d 438 (9th Cir.1982).

■ Most importantly for this court, the D.C. Circuit has adopted an approach similar to the Second Circuit's. The D.C. Circuit allows Rule 60(b) motions to challenge alleged legal errors only in the most extreme situations: namely, when the district court based its legal reasoning on case law that it had failed to realize had recently been overturned. *See District of Columbia Fed'n of Civic Ass'ns v. Volpe,* 520 F.2d 451, 451–53 (D.C.Cir.1975).

Applying the D.C. Circuit's standard to the case at bar, the court holds that the plaintiff fails under Rule 60(b) since he is merely arguing that the court made an error of legal reasoning.

### B. The Deadline for the Plaintiff's Possible Appeal

The court is sympathetic to the fact that the plaintiff is proceeding *pro se* and that he may not be familiar with certain procedural deadlines. Accordingly, the court notes that the plaintiff does have another option: namely, he can appeal to the United States Court of Appeals for the D.C. Circuit. Federal Rule of Appellate Procedure 4(a)(1)(B) lays out the time frame for a party to file a notice of appeal with the district clerk: "When the United States or its officer or agency is a party, the notice of appeal may be filed by any party within 60 days after the judgment or order appealed from is entered." FED. R.APP. P. 4(a)(1)(B). Since the federal government is the defendant in this case, the plaintiff has 60 calendar days from December 12, 2000 to file his appeal.

## IV. CONCLUSION

For all of these reasons, the court denies the plaintiff's motion for reconsideration. In addition, the court denies all of the plaintiff's other pending motions since they were improperly filed after the court dismissed the case on the merits. An order directing the parties in a fashion consistent with this Memorandum Opinion is separately and contemporaneously issued this _____ day of January, 2001.