**Jerry Lewis MYERS, Appellant,**

**v.**

**Linwood V. STEPHENSON; Attorney General of the State of North Carolina, Rufus L. Edmisten, Appellees.**

No. 84–6049.

United States Court of Appeals, Fourth Circuit.

Argued June 8, 1984.

Decided Nov. 5, 1984.

Paul Green, Third-year Student (William A. Reppy, Jr., Durham, on brief), for appellant.

Barry A. McNeill, Asst. Atty. Gen., Raleigh, N.C. (Rufus L. Edmisten, Atty. Gen. of N.C., Raleigh, N.C., on brief), for appellees.

Before MURNAGHAN and SPROUSE, Circuit Judges, and HALLANAN,[*] District Judge.

SPROUSE, Circuit Judge:

We consider whether our decision in *Shah v. Hutto,* 722 F.2d 1167 (4th Cir.1983) requires the dismissal of Jerry Myers' appeal as untimely filed. Myers appeals the district court's dismissal of his 28 U.S.C. § 2254 habeas corpus petition. He contended in the district court and contends here that (1) his guilty plea to burglary charges in North Carolina state court was induced by his lawyer's misrepresentations concerning the probable length of his sentence and (2) North Carolina's indeterminate sentencing statute was being used to punish black defendants more severely than similarly-situated whites. The district court dismissed his petition on May 27, 1983, the same day it was filed, after concluding that all of Myers' claims were meritless. (The district court did not, however, specifically address in its memorandum order the two issues pressed on appeal.) The

state, of course, agrees with the district court's finding that Myers' claims were devoid of merit, but its principal argument on this appeal is that we are without jurisdiction to consider the appeal because it was untimely filed under our ruling in *Shah v. Hutto.* Because we cannot determine factually if the appeal was timely filed, we remand for further fact-finding by the district court.

■ The last day that an appeal from the district court's decision dismissing the petition could be timely filed without an extension was June 27, 1983.[1] Fed.R. App.P. 4(a)(1). Myers mailed his notice of appeal from Caledonia Correctional Institute at Tillery, North Carolina, on either June 17 or June 21, 1983,[2] addressing the envelope to the "United States District Court for the Middle District of N.C. Winston-Salem Division." He failed to include a street address or to designate the clerk as the recipient. Although the main office of the clerk of the Middle District is located at the court office in Greensboro, the mailing to the Winston-Salem Division would satisfy Rule 4(a)(1) if it was received there within the required 30 day period. There is an unresolved question of fact, however, as to the date his notice of appeal was actually received in the Winston-Salem Division.

The only tangible clues in the record as to when the notice of appeal actually was received by the Winston-Salem Division are two postmarks on the face of the envelope in which the notice was mailed. They indicate that the envelope was handled by the post office in Winston-Salem on both June 28 and June 30. The post office there delivered the material to the Winston-Sa-

---

[*] Hon. Elizabeth V. Hallanan, District Judge for the Southern District of West Virginia, sitting by designation.

1. The thirty-day appeal period technically expired on June 26, 1983, but because this date fell on a Sunday, Myers' notice of appeal was not due until June 27. *See, e.g., Hegler v. Bd. of Educ. of Bearden School Dist.,* 447 F.2d 1078, 1080 (8th Cir.1971).

2. In representations to this court, Myers states that he actually deposited his notice of appeal in

the mail on June 17, 1983. Prison records, however, indicate the letter was not placed in the mail until June 21, 1983. This, however, is not the factual dispute that must be resolved on remand. Both dates of deposit are well within the thirty-day appeal period, so the determination of the specific date of mailing is not necessary for our decision. It is the date which the appeal was received by the district court that controls. *Pryor v. Marshall,* 711 F.2d 63, 65 (6th Cir.1983); *Aldabe v. Aldabe,* 616 F.2d 1089, 1091 (9th Cir.1980).

lem District Court office which returned it to the post office for forwarding to Greensboro. The exact time of delivery to the Winston-Salem Division of the district court is not known because court officials inexplicably neglected to stamp the receipt date on either the envelope or the notice of appeal. The record is also silent with regard to the actual handling of Myers' notice of appeal once it reached the Winston-Salem office. We know for certain only that someone in the Winston-Salem division eventually forwarded the notice of appeal to the court's main office at Greensboro, where it was marked with a filing stamp as "Received in this office on July 5, 1983," a full fourteen days after it was mailed from Caledonia prison by Myers. The district court, relying on the date impressed by the filing stamp rather than the actual date of receipt in its Winston-Salem division, treated Myers' notice of appeal as untimely. Following the procedures announced in *Craig v. Garrison,* 549 F.2d 306 (4th Cir. 1977), the district court automatically construed Myers' notice of appeal as a motion for an extension of time under Fed.R. App.P. 4(a)(5), *sua sponte* made a finding that the delay was excusable, and authorized the filing of the appeal.

## I.

■ The district court's action in construing Myers' purportedly untimely notice of appeal as a motion for an extension of time under Fed.R.App.P. 4(a)(5) was in ac-

cord with the procedures this court sanctioned in *Craig v. Garrison.* As we recently recognized in *Shah v. Hutto,* however, the 1979 amendments to Fed.R.App.P. 4(a) have changed the way district courts are to treat untimely notices of appeal from *pro se* litigants.[3] These amendments do not distinguish between the *pro se* litigant pursuing his appeal from behind the prison walls and the individual positioned to draw upon the assistance of counsel. Both categories of litigants must adhere to the strict jurisdictional predicates of Fed.R.App.P. 4(a) in order to preserve issues for appellate consideration. They must filè their notices of appeal within thirty days of judgment and can perfect a filing only by following the precise requirements of the applicable rule. Moreover, "[a] bare notice of appeal ... where no request for additional time is manifest," no longer may be construed automatically as a motion for an extension of time for the *pro se* litigant. *Shah v. Hutto,* 722 F.2d at 1168–69. The relevant filing period for all appellants, *pro se* or otherwise, can be extended only by explicitly requesting an extension of time in accordance with F.R.App.P. 4(a)(5).

The district court in the case now before us did not have the benefit of *Shah's* interpretation of the 1979 amendments to the Federal Rules of Appellate Procedure when it allowed the filing of Myers' notice of appeal. Consistent with the procedures it believed were in effect, the district court saw no need to develop

---

**3.** Myers argues that *Shah v. Hutto,* 722 F.2d 1167, overruled longstanding procedures in this circuit, and thus should be applied prospectively in order to avoid hardship to *pro se* litigants who relied on those earlier procedures. In a strict legal sense, Myers' argument is grounded on an erroneous premise. *Shah* did not overrule longstanding procedures; it simply confirmed a change in the law brought about by the 1979 amendments to the Federal Rules of Appellate Procedure. *See, e.g., Pryor v. Marshall,* 711 F.2d 63 (6th Cir.1983); *Brooks v. Britton,* 669 F.2d 665 (11th Cir.1982); *Pettibone v. Cupp,* 666 F.2d 333 (9th Cir.1981); *Wyzik v. Employee Benefit Plan of Crane Co.,* 663 F.2d 348 (1st Cir. 1981); *Mayfield v. United States Parole Commission,* 647 F.2d 1053 (10th Cir.1981). The possibility exists, of course, that some *pro se* litigants may have mistakenly relied on *Craig v. Garri-*

*son,* 549 F.2d 306 (4th Cir.1977), after the 1979 amendments. Although we are not unsympathetic to their plight, we do not believe that the possibility of such reliance in individual cases warrants a blanket decision limiting the rule of *Shah* to future litigants alone. A change in the law is often assumed to apply to all cases pending on appeal unless otherwise indicated by the enunciating tribunal. *N.S.C. Contractors, Inc. v. Twin Parks Limited Partnership (In re Twin Parks Limited Partnership),* 720 F.2d 1374, 1376–77 (4th Cir.1983), *cert. denied,* — U.S. ——, 104 S.Ct. 1602, 80 L.Ed.2d 132 (1984). The change in the law in this case is traceable to the 1979 amendments and consequently must be applied to Myers and other *pro se* litigants presently before this court. *But see Sanchez v. Bd. of Regents of Texas S. Univ.,* 625 F.2d 521, 523 (5th Cir.1980) (prospective application only).

the factual record regarding the time Myers' notice of appeal was actually received in the Winston-Salem Division. The district court treated Myers' notice of appeal as untimely because the clerk's stamp showed that it was received in the Greensboro offices of the United States District Court for the Middle District of North Carolina on July 5, 1983, eight days after the filing period closed. The court found it unnecessary to delve deeper for the simple reason that it allowed the appeal to be filed anyway under the procedures announced in *Craig.*

Our decision in *Shah,* however, makes the date Myers' notice of appeal was received in Winston-Salem important to a determination of his entitlement to appellate consideration of his claims. Since both postmarkings on the envelope containing the notice of appeal are after June 27, the last day for a timely filing, court officials in Winston-Salem may not have received the notice within the 4(a)(1) thirty-day period. On the other hand, because it is unclear how long Winston-Salem court personnel may have held the notice before forwarding it to Greensboro, it is possible that the notice reached Winston-Salem days before the June 28/June 30 postmarking dates. The two postmarkings suggest the possibility that postal or court personnel erred in handling the envelope. This explanation gains credence from the fact that the envelope was mailed at least six days before the date of the first Winston-Salem postmark and contains an address addendum in the handwriting of an unidentified person presumably in the employ of either the court clerk's office or the post office. *See, e.g., Da'Ville v. Wise,* 470 F.2d 1364, 1365 (5th Cir.) (on facts similar to instant case, court held appellee failed to show notice of appeal untimely and reached merits), *cert. denied,* 414 U.S. 818, 94 S.Ct. 170, 38 L.Ed.2d 50 (1973).

We are not prepared to allow speculation on this issue to replace appropriate fact-finding, particularly when the consequences for the appellant are so final. Myers has raised serious constitutional questions concerning the voluntariness of his guilty plea and the fairness of his sentence. The jurisdictional tangle in which he finds himself may ultimately preclude this court from reaching the merits of his claims, but not before we have resolved the confusion surrounding the timeliness of his appeal. We, therefore, remand this case to the district court for appropriate fact-finding to determine the date the notice of appeal was received at the Winston-Salem office.

## II

Even if the district court's inquiry on remand reveals that Myers' notice of appeal was untimely filed, however, *Shah* does not necessarily require that this appeal be dismissed. The prisoners in *Shah* filed their notices of appeal one day after the thirty-day time period. The period for gaining an extension passed without action by the prisoners or the district court to preserve appellate jurisdiction. Here, in contrast, the district court *sua sponte* found excusable neglect for the untimeliness of Myers' notice of appeal within the time frame required by Fed.R.App.P. 4(a)(5), and ordered the clerk to file the notice of appeal. At the time the district court entered its order allowing his appeal, Myers still had four days to file a motion for an extension of time under Rule 4(a)(5). He might have taken this step and perfected his appeal rights had not the district court given its assurance that his appeal would be filed out-of-time because of excusable neglect. To the extent Myers' failure to request an extension is attributable to the district court's assurance, he may be entitled to appellate consideration of his claims in spite of his failure to comply fully with the provisions of Fed.R.App.P. 4(a)(5). *Thompson v. Immigration & Naturalization Service,* 375 U.S. 384, 84 S.Ct. 397, 11 L.Ed.2d 404 (1964) (per curiam); *Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc.,* 371 U.S. 215, 83 S.Ct. 283, 9 L.Ed.2d 261 (1962) (per curiam); *Webb v. Dep't of Health & Human Services,* 696 F.2d 101, 104–06 (D.C.Cir.1982); *Hernandez-Rivera v. Immigration & Naturalization Service,*

630 F.2d 1352, 1354–55 (9th Cir.1980); *Chipser v. Kohlmeyer & Co.*, 600 F.2d 1061, 1063 (5th Cir.1979). We reserve a decision on this issue, however, until it has been conclusively determined that Myers' notice of appeal was untimely filed and the record concerning the handling of Myers' notice of appeal is more fully developed.

Accordingly, we remand to the district court for the purpose of holding an evidentiary hearing to determine (1) when Myers' notice of appeal was actually received by court officials in Winston-Salem, and, if appropriate, (2) whether Myers failed to request an extension of time under Fed.R. App.P. 4(a)(5) because he had knowledge that the district court was treating his notice of appeal as a motion for an extension of time.

REMANDED.

MURNAGHAN, Circuit Judge, concurring and dissenting:

The Federal Rules of Appellate Procedure in Rule 4(a)(5) provide:

> The district court, upon a showing of excusable neglect or good cause, may extend the time for filing a notice of appeal upon motion filed not later than 30 days after the expiration of the time prescribed by this Rule 4(a). Any such motion which is filed before expiration of the prescribed time may be *ex parte* unless the court otherwise requires. Notice of any such motion which is filed after expiration of the prescribed time shall be given to the other parties in accordance with local rules. No such extension shall exceed 30 days past such prescribed time or 10 days from the date of entry of the order granting the motion, whichever occurs later.

Viewed as a whole, the Rule evidently contemplates that, *so far as a would-be appellant's own behavior is concerned,*[1] he, to perfect an appeal, must in the ordinary course act timely, *i.e.,* within the initial thirty days prescribed by FRAP 4(a)(1). Rule 4(a)(5) goes on, however, to create an

exception in cases of excusable neglect or good cause. In such a case the Rule provides that, assuming the appellant has been diligent enough to file a motion for an extension of time within the ensuing thirty days, the district court may excuse the failure to comply with the requirement that the appeal be filed within the initial thirty days.

First, as an aside, it may be pointed out that technically there probably was no excusable neglect presented in the present case. Myers, the would-be appellant, was not neglectful at all. The prison and post office officials or court clerk responsible for the dilatory course followed with respect to Myers' mailing in all likelihood are chargeable with *in*excusable neglect. Nevertheless, the tale unfolding here beyond peradventure of doubt reveals "good cause", insofar as Myers was concerned, why his filing was delayed beyond the initial thirty days. One acting *pro se,* incarcerated in prison, mailing a notice of appeal no less than six and quite possibly ten days before the last day for filing, has allowed reasonable, indeed ample, time. Deprived of his freedom, he is in no position to monitor the timely progress of his mailing from point of origin to point of destination. Even were he free to monitor, still he would not be at liberty, as other would-be appellants are, should the post office fail to perform as Myers might reasonably expect, to substitute personal delivery.

A prison official who allows mail entrusted to him to lie fallow four days, a postman who is dilatory, or a clerk of court who neglects promptly to record receipt immediately upon a letter's arrival each responds to a superior other than Myers.

It is considerations like these which make me discontent with the Court's recent *en banc* decision in *Shah v. Hutto*, 722 F.2d 1167 (4th Cir.1983). Still, I am bound by *Shah v. Hutto,* and would apply it if it governed decision here. However, I am satisfied that it does not for a readily ap-

---

**1.** It is important to note that the Rule, focusing on what a party—a would-be appellant—must

do, does not by any of its language foreclose *sua sponte* activity of the district judge.

parent reason. Had the district judge here, on learning of the situation prior to expiration of the second thirty day period, simply done nothing, leaving Myers in control of his own fate, while chanting "Am I my brother's keeper?", upon expiration of the period without a Rule 4(a)(5) motion, *Shah v. Hutto* would have applied.[2]

However, the district court took a much more commendable alternate course, granting *sua sponte* the extension permitted by Rule 4(a)(5).[3] The Federal Rules of Appellate Procedure cannot be read as foreclosing so sensible a step by the judiciary. The purpose of the Rules is to enhance, not to curtail, the efficiency of judges.[4] The action fully complied with the time strictures of Rule 4(a)(5). That step purely and simply equated to a holding that "if a motion were filed, I should surely grant it."[5] In

such circumstances, the law does not exalt the ridiculous. Instead it traditionally treats as done what should have been done.[6]

In the arcane language often employed by the legal profession, it is no stretch to say that, for Rule 4(a)(5) purposes, the motion in effect had to have been filed on or before it could have been "granted" and so it must have been filed on or before the expiration of sixty days from the date of entry of the order appealed from.

The whole purpose of Rule 4(a)(5) is to attack staleness, to require a matter to be brought to the court's attention within sixty days of the entry of the order which is the subject of the appeal. Here, not only is it indisputable that it was brought to the district judge's attention within sixty days; furthermore, the court had already acted

**2.** It may be noted that the thrust of FRAP Rule 4(a)(5) is simply to insure that a claim of excusable neglect or good cause as an excuse for failure to file the notice of appeal be brought to the attention of the district court within the second thirty day period. The court may then act to allow the appeal at a time more than sixty days after entry of the order appealed from. We need not inquire, however, as to the effectiveness of the appeal, if, having learned of Myers' predicament in 56 days, the district judge had only acted to allow the belated appeal on the 61st day or thereafter. Here the allowance of the appeal occurred well within the first sixty days.

**3.** The district judge simply waived, as redundant and serving no purpose, the requirement that a motion be filed, its entire raison d'être, the prompt bringing of the matter to the court's attention, having otherwise been accomplished.
*See National State Bank of Newark v. Terminal Const. Corp.,* 217 F.Supp. 341, 354–355 (D.N. J.1963), *aff'd,* 328 F.2d 315 (3rd Cir.1964):
[T]he bonds [for work and labor] require that "such notice shall be served by registered mail, postage prepaid." ... In general, the notice provisions must be strictly construed, as they are conditions precedent to the right to sue.... Although the bonds require that the notice be sent by registered mail, this is not necessary if the claimant can show that the notice was actually received.
Absence of registration was not allowed to void the effective giving of notice. Registration, in the circumstances of the case, would have been a needless superfluity.
Similarly, in the instant case, Rule 4's filing and extension provisions, where a would-be ap-

pellant's acts alone are under scrutiny, are strictly construed and operate as a condition precedent to the right to take an appeal. Yet, even though Rule 4(a)(5) requires a would-be appellant to request a filing extension by motion, Myers' appeal, albeit untimely, rendered a motion unnecessary since, once it came to the attention of the district judge, it provided sufficient notice to the district court that he sought the 30 day grace period. A motion would have been entirely redundant.

**4.** The action by the district judge did not conflict with the evident purpose of FRAP Rule 4(a)(5). Rather it served to effectuate the objective of the rule. *Cf.* Fed.R.Civ.P. 83: "In all cases not provided for by rule, the district courts may regulate their practice in any manner not inconsistent with these rules." *See also* FRAP Rule 47.

**5.** *Cf. King v. Laborers International Union of North America, Union Local No. 818,* 443 F.2d 273, 277 (6th Cir.1971):
Had the Appellant requested an extension of time for the disposition of his motion to obtain a transcript at Government expense, we would have granted such an extension of time. In view of the Appellant's obvious inexperience with the judicial procedure and his good faith pursuit of his remedies, we believe it would be improper and unjust to dismiss his appeal for a simple failure to make a request for an extension of time.

**6.** "Equity regards and treats that as done which in good conscience ought to be done." 2 J.N. Pomeroy, Equity Jurisprudence § 364, at 10 (5th ed. 1941).

and granted the relief before the time expired. The written motion, required by the Rule to have been initiated by appellant Myers was, in the circumstances, patently superfluous. The law does not customarily command performance of a useless act. The purpose of the rule having been fully met, it should be recognized as having been substantially complied with.

By not filing a written motion, Myers, consciously or unconsciously (surely the latter), ran the risk of losing his appeal on procedural grounds at an early stage. However, not all risk taking results in losses. Here, through the intervention of fate in the guise of a sensitive and humanitarian district judge, the risk cast upon Myers by the vagaries of the prison system, the post office, or the office of the clerk of court, was avoided.[7]

Of course, the remand ordered by the majority may fortuitously demonstrate that there was a timely appeal filed within the initial thirty days. However, I protest the needless delay, and the squandering of Myers' meagre resources in time, effort and money occasioned by the delay. His appeal was timely, and he should be afforded expeditious recourse to resolution on the merits—a matter for which all his assets should be preserved.

---

**7.** It should be noted that several courts have attempted to soften the blow of Rule 4's strict filing deadlines on *pro se* litigants. In particular *United States v. Lucas*, 597 F.2d 243, 245 (10th Cir.1979), stressed that "[i]t would be most helpful if the district court would advise a would-be appellant, and particularly one who is pro se, that his notice of appeal is untimely, thereby putting him on notice that some immediate action is yet required to secure appellate jurisdiction." *Pryor v. Marshall*, 711 F.2d 63, 65 n. 4 (6th Cir.1983) specifically cited the quoted passage in *Lucas* with approval. *See also Mayfield v. United States Parole Comm'n*, 647 F.2d 1053, 1055 n. 5 (10th Cir.1981) ("We reiterate the suggestion made in *Lucas*" that the District Court notify a pro se litigant of an untimely appeal.)

Ironically, *Shah v. Hutto*, 722 F.2d 1167 (4th Cir.1983), relied upon *Pryor v. Marshall* for the proposition that simply because "plaintiffs are incarcerated and are proceeding pro se does not change the clear language of [Rule 4]. Dismissal is required where the Rule has not been followed." *Id.* at 1168. But *Pryor* specifically recommended a "helping hand" to pro se litigants who have filed an untimely appeal. That is exactly what the district judge provided here.

Nothing in the record suggests that Myers was warned in time of his untimely appeal. Instead, the rendering to him of notice became altogether unnecessary since the district court *sua sponte* had remedied the delinquent filing of Myers' appeal. Given the general predisposition of courts to alert *pro se* litigants of a failure to comply with Rule 4(a)'s thirty day deadline, coupled with Myers' good faith and diligence in initially filing his appeal, he should not be prejudiced simply because the district court eliminated all need for notice in the instant case. At the very least, there should have to be a remand to allow the district court to notify Myers of the necessity that a motion be filed, coupled with a warning that filing in four days was necessitated to comply with the sixty day limit on filing. Obviously, such an approach would constitute a great deal of unnecessary "made work". Much more sensibly, the district court's action in allowing the appeal should be considered tantamount to notice and a subsequent timely motion for an extension on the part of Myers.