PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CLIFTON E. SPENCER,
               *Petitioner-Appellant,*

v.                                              No. 99-7007

ERNEST SUTTON,
               *Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
W. Earl Britt, Senior District Judge.
(CA-99-46-5-2BR)

Argued: September 28, 2000

Decided: February 7, 2001

Before LUTTIG and KING, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

_____

Affirmed by published opinion. Judge Luttig wrote the majority opinion, in which Senior Judge Hamilton joined. Judge King wrote a dissenting opinion.

_____

## COUNSEL

**ARGUED:** Letitia C. Echols, NORTH CAROLINA PRISONER LEGAL SERVICES, INC., Raleigh, North Carolina, for Appellant. Clarence Joe DelForge, III, Assistant Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Michael F. Easley, Attorney General,

NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellee.

## OPINION

LUTTIG, Circuit Judge:

Clifton Spencer pled no contest to the murder of Stacy Stanton. The district court dismissed Spencer's subsequent petition for a writ of habeas corpus as untimely, and he now appeals. Although for different reasons than those relied upon by the district court, we also conclude that Spencer's petition was untimely. Accordingly, we affirm the judgment of the district court.

### I.

Stacy Stanton was found dead on her living room floor on February 3, 1990. She was sprawled on her mattress, with over sixteen stab wounds to her body. J.A. 349-52. Based on information that Spencer planned to visit the victim on the night of her murder, police questioned Spencer, who made numerous incriminating statements. J.A. 176-78, 356-62. Spencer was later indicted for first-degree murder, and the prosecutor announced his intention to seek the death penalty. J.A. 196.

On January 9, 1991, based on advice from his mother and his attorney, Spencer pled no contest to a charge of second-degree murder, the sentence for which was life imprisonment. Thereafter, Spencer filed a motion for appropriate relief (MAR) in North Carolina state court, in which he raised several claims, including ineffective assistance of counsel. After an evidentiary hearing, the court denied the MAR, and the North Carolina Court of Appeals subsequently denied Spencer's certiorari petition. J.A. 51, 75.

Spencer did not pursue further collateral relief for almost three years following the Court of Appeals' June 3, 1994, denial of certiorari. Then, on April 23, 1997, Spencer filed a second MAR in Dare County Superior Court. Based on the statement of a witness who had

contacted his attorney in July 1995, nearly two years earlier, Spencer alleged in his second MAR that the state, in violation of *Brady* v. *Maryland*, 373 U.S. 83 (1963), had failed to disclose the names of witnesses who made exculpatory statements. J.A. 76-79. The court denied Spencer's second motion for appropriate relief on June 17, 1997. Spencer filed a certiorari petition to the North Carolina Court of Appeals on June 23, 1997, and an evidentiary hearing was ordered. J.A. 97-116.

Because Spencer had not filed his second motion for appropriate relief until the day before the one-year limitations period ran on his right to file a federal habeas petition, he was concerned that, due to the time necessary to receive notification of state court action by the ordinary mail, he would not learn of any state court order denying him relief before the remaining day of the federal filing period lapsed. Therefore, Spencer filed a motion in federal court for a fourteen-day extension of the one-year statute of limitations. The district court granted the extension on February 3, 1998. J.A. 124-27.

Following the state evidentiary hearing on Spencer's *Brady* claim, the state court denied Spencer's second MAR on April 24, 1998. J.A. 128-30. On May 6, 1998, Spencer filed a motion for preparation of a transcript, and, on May 13, 1998, a certiorari petition to the North Carolina Court of Appeals together with a motion to amend the petition after receipt of the transcript. J.A. 132-38. Several weeks later, the Court of Appeals dismissed the petition without prejudice to refile after receipt of the transcript. J.A. 193. Spencer eventually received the transcript and, on September 18, 1998, filed a motion for ruling on a claim of newly discovered evidence, which was denied on December 9, 1998. J.A. 140-44, 191.

Spencer then filed a certiorari petition to the North Carolina Court of Appeals on December 18, 1998. That court denied the petition on January 13, 1999, thus exhausting Spencer's state remedies. J.A. 192. And, six days later, on January 19, 1999, Spencer filed a petition for a writ of habeas corpus in federal district court pursuant to 28 U.S.C. § 2254, in which he claimed that his counsel was ineffective and that the prosecution failed to disclose exculpatory evidence. J.A. 12-38.

The federal district court held that Spencer's habeas petition was untimely because the one-year statute of limitations applicable to

habeas petitions in the federal courts was not tolled during the more than fifteen days that elapsed between the various denials of Spencer's claims and the resulting filings of appeal over the course of his pursuit of his second MAR. Thus, reasoned the district court, even though the statute of limitations was equitably tolled for fourteen days, Spencer was still tardy in the filing of his habeas petition. J.A. 406-12, 424-25. This appeal followed.

## II.

The timeliness of Spencer's habeas petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).[1] The AEDPA was signed into law on April 24, 1996, and became effective immediately. It provides in relevant part as follows:

> A 1-year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of —
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. . . .

28 U.S.C. § 2244(d)(1). For prisoners like Spencer, whose criminal convictions preceded enactment of the AEDPA, the limitations period

---

[1]The Supreme Court held in *Slack* v. *McDaniel*, 529 U.S. 473, 484 (2000), that,

> [w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a COA [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

We assume for purposes of this appeal that the requirements of *Slack* for the issuance of a COA are satisfied.

began to run with the AEDPA's effective date on April 24, 1996, and ended on April 24, 1997. *Hernandez* v. *Caldwell*, 225 F.3d 435, 439 (4th Cir. 2000).

Here, as noted, the district court equitably tolled the AEDPA's one-year limitations period for fourteen days. The court nonetheless dismissed Spencer's petition as untimely, holding that the statute was not tolled during the days (in excess of 15) between the various state court denials of the claims raised by Spencer in his second motion for relief and his appeals from those denials.

If the district court was incorrect in its decision not to toll the statute during the fifteen or more total days between the state denials of Spencer's claims and Spencer's appeals from those denials, then Spencer's habeas petition was timely filed, assuming the court was correct in its decision to equitably toll the statute of limitations for fourteen days. Paradoxically, however, if the district court was incorrect not only in its decision *not to toll* during the so-called "gaps" between state proceedings, but also in its decision equitably *to toll* the statute for the fourteen days to accommodate the ordinary mails, then the court was correct in its ultimate conclusion that Spencer's petition was untimely.

For the reasons that follow, we hold that the district court actually did err in both of its tolling decisions, and therefore that Spencer had only one day after the final disposition of his second state MAR in which to file his federal habeas petition. Because he filed his habeas petition six days after the state court finally disposed of his motion, his petition was, in fact, untimely.

A.

As to the district court's decision not to toll the statute of limitations during the times between a state court's denial of Spencer's claims and Spencer's appeal from that denial, the AEDPA provides as follows:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the

> pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2). The district court held that this provision only authorizes the tolling of the statute during times when an application for relief was literally pending in a state tribunal and does not authorize tolling during times between the denial of a claim by a state court and the appeal from that denial. Although it was entirely reasonable for the district court to have so held, we held subsequent to the district court's decision, in *Hernandez* v. *Caldwell*, that the limitations period is tolled from the time an application for state post-conviction or other collateral review is initially filed until it is finally disposed of by the state courts, including during times between denials of claims and appeals. 225 F.3d at 438. Therefore, the district court erred in not tolling the statute of limitations for the entire period from Spencer's initial filing of his second MAR on April 23, 1997, until its final disposition on January 13, 1999.

### B.

Because the district court erred in not tolling the statute of limitations during the gaps between the various North Carolina state court denials of Spencer's claims and Spencer's appeals from those denials, Spencer's habeas petition was timely filed unless the district court also erred in its decision to toll the statute equitably for fourteen days following the state court's final disposition of Spencer's second motion for appropriate relief. If the court erred in this latter regard as well, then of course Spencer had only one day remaining after the state court's final disposition of his second MAR in which to file his federal habeas petition, and, because he did not file until six days after that disposition, his petition was untimely.

"[A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." *Harris* v. *Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000). For this reason, equitable tolling is available only in "those rare instances where — due to circumstances external to the party's own conduct — it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Id*. It is

appropriate when, but only when, "extraordinary circumstances beyond [the petitioner's] control prevented him from complying with the statutory time limit." *Id.*

The district court equitably tolled the statute of limitations because Spencer waited until the final day of AEDPA's one-year limitations period before filing his second state motion for appropriate relief, thus allowing himself but a single day after the state court's final disposition in which to file his federal habeas petition — an insufficient amount of time within which for Spencer to receive notice of the decision via the ordinary mail. J.A. 125-26. Even assuming arguendo that an *inordinate delay* in the delivery of the mail could be so regarded, we do not believe that the *ordinary time that it takes to deliver the mail* can be regarded as a "circumstance[ ] external to [a] party's own conduct" within the contemplation of the equitable tolling doctrine. *Cf. Sandvik* v. *United States*, 177 F.3d 1269 (11th Cir. 1999) (refusing to toll statute where tardiness was due to lawyer's decision to send petition by the ordinary mails). And to accept it as such, effectively would be nothing short of to extend judicially the legislatively-prescribed one-year statute of limitations. Every person knows, or should know, that it can take at least several days to receive mail even from within the same postal jurisdiction, and he can, and may reasonably be required to, adjust his conduct accordingly. Ordinary delivery time is not a "rarity," nor is the charge of knowledge of such to the habeas petitioner "unconscionable."

Even were we inclined to recognize equitable tolling to accommodate the time ordinarily necessary to deliver the mail, we would be disinclined to extend the doctrine under the circumstances with which we are presented here. That Spencer had only one day remaining in the limitations period is solely the result of his own strategic decision not to file his MAR until the final day before the one-year federal limitations period expired. Were it not for Spencer's own delay, the time needed for ordinary mail delivery almost certainly would not have affected the timeliness of his habeas petition. Moreover, not only did Spencer wait until the eleventh hour to file his second state motion; he did not file that second motion for almost two years after first learning of the information upon which he now bases his principal claim. J.A. 79 (affidavit of Barbara McGuinness, a witness whose statements the police allegedly withheld in violation of *Brady*)

("Upon reading about Clifton [Spencer's] case in the Virginian Pilot Newspaper on July 4, 1995, I contacted attorney Edgar Barnes [Spencer's attorney] and told him about the facts stated above."); *see also* Appellant's Reply Br. at 7 (conceding that Spencer learned of witness information in 1995).[2]

Indeed, it is apparent that Spencer has delayed at every juncture of his post-plea, state and federal proceedings. Although the criminal judgment against Spencer became final when he pled no contest to second-degree murder in January 1991, he waited over a year, until April 1992, to file his first state MAR. After his first MAR was finally disposed of in June 1994, Spencer waited almost three more years — until April 1997 — to file his second MAR, pursuing no collateral relief in the meantime, even though he knew the information on which he now bases his *Brady* claim. He finally filed his federal habeas petition in January 1999 — eight years after the judgment against him became final, only four of which were consumed with the pursuit of collateral relief in state court. This is not, we are satisfied, a petitioner with a special call on equity.

### CONCLUSION

Because the district court erred in not tolling the AEDPA's statute of limitations during the times between the various denials of Spencer's claims and his appeals from those denials while he pursued his state court remedies, but also erred in its fourteen-day tolling of the

---

[2]Spencer claims that the police withheld statements taken from witnesses Barbara McGuiness and Dawn Beacham about a protracted public argument between Stacy Stanton, her boyfriend, Mike Brandon, and his mistress, Patty Rowe, on the night before Stanton was killed. J.A. 18. The state court held that the statements given to police were not exculpatory and that Spencer failed to show that discovery of the statements would have caused him to change his plea. J.A. 128-30. While we need not decide the merits of Spencer's *Brady* claim, the fairest inference based on the transcript of the hearing in state court is that, at most, the two witnesses told police about threats of some kind toward the victim, but not about death threats. J.A. 160, 163, 165, 182-83, 187. Furthermore, the record indicates that Spencer already knew about tension and conflict between the victim and her boyfriend on the night before the murder. J.A. 167-69.

statute in equity, Spencer had only one day following the denial of his second certiorari petition by the North Carolina Court of Appeals in which to file his federal habeas petition. Spencer's filing of his habeas petition six days after the final disposition of his second state MAR, accordingly, was untimely. The judgment of the district court is therefore affirmed.

*AFFIRMED*

KING, Circuit Judge, dissenting:

Because of Spencer's detrimental reliance on the fourteen-day extension granted by the district court's Order of February 3, 1998, he is entitled to invoke the "unique circumstances" exception to the jurisdictional bar his untimely claim would otherwise present. I would therefore vacate the dismissal of Spencer's petition, and I would remand his case for further consideration.

I.

The majority correctly concludes that the district court erroneously tolled the AEDPA one-year statute of limitations to account for delays inherent in the delivery of the mail. *Ante*, at 7. Indeed, an ordinary delay in mail delivery cannot be regarded as a "circumstance[ ] external to [a] party's own conduct" within the meaning of equitable tolling. *Ante*, at 6. In my view, however, the inquiry should not end there.

A.

Spencer's state petition was filed in time to toll the AEDPA one-year statute of limitations — exactly one day before it expired. Later recognizing that slow mail delivery might cause the anticipated federal petition to be untimely, Spencer sought and received a fourteen-day extension from the district court (providing him, after exhaustion of his state post-conviction remedies, a putative total of fifteen days within which to file his federal petition). Spencer reasonably relied on the extension Order — and that reliance was fatal. My friend Judge Luttig, in considering Spencer's habitual dilatoriness, has concluded that Spencer does not have "a special call on equity." *Ante*, at 8. I

respectfully disagree. Had the extension Order not been granted, Spencer could otherwise have filed his petition in a timely manner. His detrimental reliance on the extension Order therefore presents a compelling case for the exercise of our jurisdiction under the "unique circumstances" doctrine.

B.

The Supreme Court, for over thirty-five years, has recognized our power to equitably alter jurisdictional deadlines when a litigant has detrimentally relied on a court order or statement. In *Thompson v. INS*, 375 U.S. 384 (1964) (per curiam), the petitioner filed a naturalization petition with the district court, which was denied on April 18, 1962. *Id.* at 384. Twelve days later (April 30), the petitioner filed a motion to amend, along with a motion for a new trial. Those motions were, under the applicable rules, two days late. The government did not object, however, and the court specifically held the post-trial motions to be timely. The motions were then denied on October 16, 1962, and a notice of appeal was filed on December 6, 1962. The appeal was therefore filed within sixty days from the denial of the post-trial motions, but not within sixty days from the April 18 denial of the naturalization petition. *Id.* at 385.

The Supreme Court acknowledged that, under a literal application of the rules, Thompson's appeal was untimely because the tardy post-trial motions were ineffective to toll the sixty-day period for filing the appeal. The Court held, however, that since the petitioner "filed the appeal within the assumedly new deadline but beyond the old deadline. . . . 'unique circumstances'" mandated that the appeal be deemed timely. *Id.* at 387.

Given his detrimental reliance on the extension Order, Spencer presents an equally compelling case of "unique circumstances." Indeed, this exception has been used widely by appellate courts to hear otherwise untimely appeals. *Wolfsohn v. Hankin*, 376 U.S. 203 (1964) (per curiam); *Hollins v. Department of Corrections*, 191 F.3d 1324, 1326-28 (11th Cir. 1999) (habeas counsel's reliance on court's computerized docket information sheet constituted unique circumstance when final judgment was never shown on the system); *Estle v. Country Mut. Ins. Co.*, 970 F.2d 476, 478 (8th Cir. 1992) (finding

notice of appeal timely because the plaintiff was "lulled into inactivity" by district court's erroneously granted extension) (quoting *Willis v. Newsome*, 747 F.2d 605, 606 (11th Cir. 1984)); *Fairley v. Jones*, 824 F.2d 440, 442-43 (5th Cir. 1987) (detrimental reliance on magistrate's unauthorized extension of time for filing notice of appeal constituted "unique circumstances justifying our exercise of jurisdiction"); *Government of the Virgin Islands v. Gereau*, 603 F.2d 438 (3d Cir. 1979) (applying unique circumstances doctrine to jurisdictional deadline for filing motion to reduce prior sentence). *See also Myers v. Stephenson*, 748 F.2d 202, 205 (4th Cir. 1984) (dicta) ("To the extent Myers' failure to request an extension is attributable to the district court's [erroneous] assurance, he may be entitled to appellate consideration of his claims in spite of his failure to comply fully with [the applicable time limits].").

While the validity of the unique circumstances doctrine has been sometimes called into doubt, its vitality continues to be recognized. *United States v. Heller*, 957 F.2d 26, 28-29 (1st Cir. 1992) (noting that many courts have questioned the doctrine, but that "[t]he Supreme Court [ ] passed up an opportunity to repudiate it" and "courts of appeals generally have continued to assume that the doctrine remains viable."); *In re Mouradick*, 13 F.3d 326, 329 n.5 (9th Cir. 1994). *See also Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 535 (1983) (per curiam) ("Needless to say, only this Court may overrule one of its precedents. Until that occurs, [Supreme Court precedent] is the law.").

Furthermore, proscriptions properly placed on the unique circumstances doctrine have no application here. In this situation, Spencer received specific assurance from the extension Order, unchallenged by the State of North Carolina, that the statute would be tolled for fourteen additional days. *Cf. Moore v. South Carolina Labor Bd.*, 100 F.3d 162, 164 (D.C. Cir. 1996) (doctrine limited to "written court orders or oral rulings made in the course of a hearing"); *Hope v. United States*, 43 F.3d 1140, 1143-44 (7th Cir. 1994); *Heller*, 957 F.2d at 30-31. Nor was Spencer's reliance on the extension Order unreasonable. *Cf. Feinstein v. Moses*, 951 F.2d 16, 19-20 (1st Cir. 1991); *Pinion v. Dow Chemical, U.S.A.*, 928 F.2d 1522, 1532 (11th Cir. 1991); *Kraus v. Consolidated Rail Corp.*, 899 F.2d 1360, 1365-66 (3d Cir. 1990). Moreover, nothing in AEDPA expressly forbade

the district court from granting the extension. *Cf. Weitz v. Lovelace Health System, Inc.*, 214 F.3d 1175, 1178-80 (10th Cir. 2000) ("unique circumstances" did not apply because "[u]nlike a situation where some extension of time was permissible, here the rules specifically and directly prohibit courts from granting any extensions").\*

Spencer's reliance on an explicit and valid court order should not render his habeas corpus petition unreviewable. In the unusual situation presented here, I believe Spencer to be entitled to consideration of his petition. I respectfully dissent.

---

\*Indeed, we have acknowledged that equitable tolling is available in some situations. *Harris v. Hutchinson*, 209 F.3d 325, 329-330 (4th Cir. 2000). It is not until today that we have specifically held that district courts are without power to grant an equitable extension under the facts presented here. Thus, Spencer's reliance on the extension Order would not present the problems the Tenth Circuit found determinative in *Weitz*.