Jody Larry **MORROW**, Petitioner,

v.

Sidney **HARKLEROAD**, Marion Correctional Institution, Marion, North Carolina; and Roy A. Cooper, III, Attorney General of North Carolina, Respondents.

No. CIV. 202CV142.

United States District Court,
W.D. North Carolina.
Bryson City Division.

Feb. 27, 2003.

Ann B. Petersen, Glover & Petersen, Chapel Hill, NC, James R. Glover, Glover & Petersen, P.A., Chapel Hill, NC, for Petitioner.

Clarence J. DelForge, III, Correctional Institution, Fed. Habeas Section, Marion, North Carolina, NC, Dept. of Justice, Raleigh, NC, for Respondent.

### MEMORANDUM OF OPINION

THORNBURG, District Judge.

**THIS MATTER** is before the Court on the Petitioner's petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. Respondent has filed both a motion for summary judgment and a response to the petition. Petitioner, who is represented by counsel, has filed a reply to the response. The undersigned concludes the record is adequate and finds an evidentiary hearing is unnecessary. Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts. For the

reasons stated herein, the petition is denied.

## I. TIMELINESS OF THE PETITION

■ The Court first addresses the issue of whether this petition for federal *habeas corpus* relief was timely filed. Title 28 U.S.C. § 2244(d)(1)(A) provides in pertinent part:

A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; .... "

On December 4, 1997, the North Carolina Supreme Court denied the Petitioner's petition for discretionary review. *State v. Morrow*, 127 N.C.App. 558, 492 S.E.2d 389, *review denied*, 347 N.C. 408, 496 S.E.2d 389 (1997). Thus, the Petitioner's conviction became final on March 4, 1998. *Hill v. Braxton*, 277 F.3d 701, 703 (4th Cir.2002) (A case is final when a judgment of conviction has been rendered, the appeal exhausted and the 90–day period within which to file a petition for *certiorari* with the United States Supreme Court has elapsed.); *accord, State v. Wilson*, —— N.C.App. ——, 571 S.E.2d 631 (2002).

Petitioner did not file a motion for appropriate relief, a post-conviction motion, until March 1, 1999. By this time, 362 days had expired since his conviction became final. *Harris v. Hutchinson*, 209 F.3d 325, 327 (4th Cir.2000) ("Thus, the statute provides in no uncertain terms that the one-year period within which a federal habeas petition must be filed begins at 'the conclusion of *direct review*' of the judgment of conviction."); *accord, Spencer v. Sutton*, 239 F.3d 626, 629 (4th Cir.2001); *Lester v. South Carolina*, 57 Fed.Appx. 156 (4th Cir.2003). However, the statute also provides "that the running of this

period is suspended for the time that a state post-conviction proceeding 'is pending.'" *Harris, supra; Spencer, supra;* 28 U.S.C. § 2244(d)(2). Thus, the time during which this motion was pending was tolled. *Allen v. Mitchell*, 276 F.3d 183 (4th Cir.2001). On May 21, 2002, the North Carolina Court of Appeals affirmed the denial of the Petitioner's motion for appropriate relief. *State v. Morrow*, 150 N.C.App. 440, 563 S.E.2d 640 (table), 2002 WL 1013483 (2002). The issue is whether the one-year period began to run again on this date.

In the Petition, counsel states that the Court of Appeals "issued its final mandate affirming the Superior Court's decision on June 10, 2002." Petition for Writ of Habeas Corpus, filed June 10, 2002, at 3. There is no such "mandate" in the record. "Unless a court of the appellate division directs that a formal mandate shall issue, the mandate of the court consists of certified copies of its ... opinion .... The mandate is issued by its transmittal from the clerk of the issuing court to the clerk ... of the tribunal from which appeal was taken ...." N.C. R.App. P. 32(a).

The United States Fourth Circuit Court of Appeals has recently addressed this issue.

Rouse ... contends that his motion for appropriate relief remained pending for twenty days after certiorari was denied, ... because North Carolina procedural rules state that an appellate mandate should issue twenty days after an opinion.... Rouse claims that the mandate did not issue on the Supreme Court's denial of certiorari in his case until February 25—but he has submitted no evidence that any mandate ever issued in his case.... We agree with Rouse that the inapplicability of Rule 32(b) is less than clear .... In the absence of evidence that a mandate issued in Rouse's

case, however, ... Rouse has not shown that Rule 32(b) extended the period in which his post-conviction motion was "pending" in state court.

*Rouse v. Lee,* 314 F.3d 698, 702–03 (4th Cir.2003). If the Petitioner's conviction became final on May 21, 2002, his habeas petition filed in this Court on June 10, 2002, was untimely. *Crawley v. Catoe,* 257 F.3d 395, 399 (4th Cir.2001), *cert. denied,* 534 U.S. 1080, 122 S.Ct. 811, 151 L.Ed.2d 696 (2002) ("Following the denial of relief in state courts in state habeas proceedings, neither the time for filing a petition for certiorari in the United States Supreme Court, nor the time a petition for certiorari is considered by the United States Supreme Court, is tolled under 28 U.S.C. § 2244(d)(2) from the one-year statute of limitations under § 2244(d)(1).").

The Fourth Circuit has consistently "been mindful that Congress enacted § 2244(d) 'with the ... purpose of curbing the abuse of the statutory writ of habeas corpus.'" *Allen,* 276 F.3d at 186 (quoting *Crawley,* 257 F.3d at 400); *Spencer, supra.* The undersigned, therefore, concludes that the petition in this case was untimely filed.

## II. EQUITABLE TOLLING

■ Having reached that conclusion, the issue is whether equitable tolling principles should be applied. "In imposing a statute of limitations on federal habeas petitions in the AEDPA [Antiterrorism and Effective Death Penalty Act], Congress must have accepted the possibility that some cases would receive no federal habeas review." *Rouse,* 314 F.3d at 704 (citing 28 U.S.C.A. § 2244(d)). Factors which would support equitable tolling include the length of the delay in filing the habeas petition, the completeness of the record in the state court, the availability of a hearing on the claims presented, the possibility of a "powerful constitutional claim," and the punishment imposed, *i.e.,* capital versus non-capital punishment. *Id.,* at 704–07.

■ Here, the Petitioner stood trial, appealed his convictions and received a decision from the North Carolina Court of Appeals. The North Carolina Supreme Court declined discretionary review. After filing his motion for appropriate relief, Petitioner had a full hearing in 1999 at which time he presented testimony from various individuals in an effort to prove the State had failed to prove its case, the prosecutor had engaged in improper conduct, and his trial attorneys had been ineffective. When that motion was denied, the Court of Appeals granted his petition for certiorari and oral arguments were conducted. The Court of Appeals issued its written decision on May 21, 2002. Petitioner has exhaustively pursued all state court remedies and does not face the death penalty. And, as noted below, he has failed to state a "powerful constitutional claim." The Court, therefore, finds this is not a case in which equitable tolling is appropriate. *Id.; Harris, supra.* However, because neither party raised the issue of the timeliness of the petition, the Court will address the merits of the Petitioner's claims.

## III. STANDARD OF REVIEW

Title 28 U.S.C. § 2254 provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evi-

dence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Fourth Circuit has recently interpreted this language.

[S]ubsection (1) ... prohibit[s] the issuance of the writ unless (a) the state court decision is in "square conflict" with Supreme Court precedent which is controlling as to law and fact or (b) if no such controlling decision exists, "the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant supreme court precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts.... In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable."

*Fitzgerald v. Greene,* 150 F.3d 357, 362 (4th Cir.1998) (quoting *Green v. French,* 143 F.3d 865, 870 (4th Cir.1998)).

Moreover, in considering the habeas petition of a state prisoner, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## IV. FACTUAL RECITATION

In the early evening hours of 27 February 1992, the badly beaten and stabbed body of 69 year old Edward Mann (Mann) was discovered at his home, near Murphy, in Cherokee County, North Carolina. Evidence collected at the scene included blood samples, fingerprints, and a concrete slab with a bloody shoe print. Almost two years later, in 1994, investigating officers obtained statements from Scott Turner (Turner) and Scott Cole (Cole) that implicated [Petitioner] in Mann's murder. Thereafter, defendant was arrested, and was tried in January, 1996. At [Petitioner's] trial, the State relied heavily upon the testimony of Turner and Cole. Turner testified that he and [Petitioner] were close friends, who frequently socialized and used drugs together. Six months after Mann was murdered, at a time when Turner and [Petitioner] were alone, [Petitioner] told Turner that he and another person had killed Mann.... [Petitioner] told Cole in 1993 that he and others had killed and robbed Mann ....

. . . . .

A third witness, Faye Stroud (Stroud), testified that in early 1992, her 17 year old niece, Tracy Carroll (Carroll), associated with a group that included [Petitioner], Heather Rogers (Rogers) and Marvin Patterson (Patterson). During the spring of 1992, Carroll became upset whenever she received phone calls from Rogers or Patterson. Stroud testified further that in May, 1992, Carroll told her that she had been present when Mann was killed and robbed, and that she was afraid of the other people involved in the murder. She was very upset, crying and shaking, when she recounted this. Within two weeks of this conversation, Carroll died of a drug overdose.

*Morrow,* 2002 WL 1013483, at *1. After a jury trial, the Petitioner was found guilty of second degree murder and armed robbery and was sentenced to a total term of 90 years imprisonment.

On May 12, 1993, Patterson and Thomas Charles Laythe entered into plea agreements with the United States Government pursuant to which Patterson pled guilty to distribution of morphine and meperidine and Laythe pled guilty to aiding and abetting that offense. *United States v. Patterson,* 38 F.3d 139, 141 (4th Cir.1994). Pat-

terson reserved the right to contest at sentencing the issue of whether Carroll's death resulted from the drugs which he distributed. *Id.* The district court found that Carroll's death was the result of the drugs distributed to her by Patterson and sentenced him to 240 months imprisonment. Laythe was sentenced to 87 months imprisonment as an aider and abettor of the crime.

## V. DISCUSSION

Petitioner raises three claims: (1) the state prosecutor knowingly presented false evidence; (2) trial counsel were ineffective; and (3) the admission of certain hearsay evidence was unconstitutional.

■ The first claim results from testimony received from Scott Turner during the Petitioner's hearing on the motion for appropriate relief. At trial, Turner testified that the Petitioner had confessed the murder to him. However, he also testified that he spent the night of February 26, 1992, the night that Mann was murdered, at Marvin Patterson's residence. Turner also said that when he went to sleep that night, the Petitioner's truck was outside. However, the next morning it was gone.

At the MAR [motion for appropriate relief] hearing, Turner said he did not know at trial the specific calendar date he had been at Marvin Patterson's residence[, and] relied upon the dates used in the prosecutor's questions. Turner testified that he realized for the first time during the MAR hearing that the dates were incorrect. He stated that he now believes he spent the night of February 27th at the Patterson residence, the night after Eddie Mann was murdered.

*Morrow,* 2002 WL 1013483, at *3–4. Based on this clarification, Petitioner's attorneys argued that the State had know-

ingly presented false evidence in the form of Turner's trial testimony which gave the impression that Petitioner had obtained his truck sometime during the evening of February 26, 1992, and used it to murder Mann. In actuality, Turner's trial testimony was that Marvin Patterson had borrowed the Petitioner's truck, which Patterson had driven to his home and parked there. Trial Transcript, Vol. II, at 387. Turner also testified that he did not see the Petitioner at all that night and could not remember whether Patterson was there when Turner went to sleep. *Id.,* at 388. Turner had no personal knowledge of how Patterson's truck left the residence because he went to sleep. *Id.,* at 437–38.

If Turner's testimony was inaccurate, the inaccuracy was inadvertent. There is no evidence that the State's counsel or Deputy Sheriff White deliberately and knowingly permitted false testimony to be given by Scott Turner or knowingly failed to correct it. Indeed, ... [Deputy] White ... contradicted Turner's testimony that he spent the night of February 26th, 1992 at Patterson's residence. *This inconsistency was before the jury for its consideration.*

. . . . .

Turner's testimony about the truck neither implicated [Petitioner], nor contradicted [his] evidence. *The real significance of Turner's testimony was Turner's assertion that [Petitioner] had confessed to him that he participated in killing Mann. Turner has never recanted this testimony, and, in fact, reiterated it at the hearing on [Petitioner's MAR].* The primary factual issue for the jury to resolve at trial was the credibility of the testimony of Turner and Cole, that [Petitioner] had admitted to each of them that he participated in Mann's murder.[1] It was

---

1. Turner testified that in June 1992 he and the Petitioner "were riding out to Ingles and I

the resolution of this question, and not the date when someone had borrowed or "switched" a truck, that determined the outcome of the trial.

*Morrow, supra* (emphasis and footnote added).

■ "A state 'denies a defendant due process by knowingly offering or failing to correct false testimony.'" *Daniels v. Lee*, 316 F.3d 477, 493 (4th Cir.2003) (quoting *Basden v. Lee*, 290 F.3d 602, 614 (4th Cir.), *cert. denied,* —— U.S. ——, 123 S.Ct. 446, 154 L.Ed.2d 341 (2002)). Such a claim " 'requires a showing of the falsity and materiality of testimony.' False testimony is 'material' when 'there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" *Id.* (quoting *Boyd v. French*, 147 F.3d 319, 329–30 (4th Cir.1998)) (other internal quotations and citations omitted). "[F]indings of fact by a state court are entitled to a 'presumption of correctness' that a petitioner ... must rebut by clear and convincing evidence." *Carter v. Lee*, 283 F.3d 240, 248 (4th Cir.), *cert. denied,* —— U.S. ——, 123 S.Ct. 196, 154 L.Ed.2d 166 (2002). The state court's determination on this issue has not been so rebutted. And, as noted by the state court, the fact remained that, regardless of the testimony concerning the truck, two witnesses testified that the Petitioner had confessed to them that he had killed the victim. *Basden*, 290 F.3d at 614; *Morris v. Woodford*, 273 F.3d 826, 835 (9th Cir.2001), *cert. denied,* —— U.S. ——, 123 S.Ct. 341, 154 L.Ed.2d 248 (2002); *Chambers v. Johnson*, 218 F.3d 360 (5th Cir.2000) (The state court's rejection of the claim that confessions were materially false did not involve an unreasonable application of clearly established federal law or an unreasonable determination of facts in light of the evidence presented.); *Bramblett v. True*, 2003 WL 58283, at *10–11 (4th Cir.2003).

■ Next, Petitioner claims he received ineffective assistance of counsel because his trial counsel failed to call Marvin Patterson and Heather Rogers as witnesses. Heather Rogers was also charged in state court with the murder of Eddie Mann; in fact, her trial was held almost one year before the Petitioner was tried. Trial Transcript, Vol. III, at 460. The jury in her case failed to reach a verdict, causing a mistrial; however, the state prosecutor did not pursue a second trial. Petitioner argues that evidence presented at Rogers' trial would have shown that Terry Owenby actually killed the victim.[2]

During the Petitioner's trial, the state prosecutor sought to introduce the evidence of Kimberly Kennedy, a social worker who had provided counseling to Heather Rogers while she was receiving inpatient treatment for substance abuse. Trial Transcript, Vol. IV, at 687–710. During a *voir dire* outside the presence of the jury, the trial court heard Ms. Kennedy's testimony which she averred was the same testimony which she provided during Heather Rogers' trial.[3] *Id.* After hearing the *voir dire*, the trial court ordered it would be inadmissible in the Petitioner's

---

went and asked [Petitioner], I said, "tell me the truth, did you kill Eddie Mann." He said, "I'd hate to have to lie to a friend." I told him not to lie to me, and the said, "yeah, I did." He went on to tell me that somebody went up and knocked on the door to lure Eddie out, and when he came to the door that night [Petitioner] hit him; and he said that Eddie was stronger than what [Petitioner] thought he'd be, and Eddie swung and hit [Petitioner] back. He said he had to cut him." Trial Transcript, Vol. II, at 393–94.

2. Petitioner did not, however, place any transcripts from the Rogers' trial into the record before this Court.

3. Ms. Kennedy was ordered by the Rogers' trial court to provide her testimony and it was admitted at that trial.

trial. However, the testimony would have been damning to the Petitioner's case. In essence, Heather Rogers told her counselor that Tracy Sue Carroll had been murdered by Marvin Patterson who overdosed her with morphine in order to keep her quiet. *Id.* Rogers also confessed that she and Carroll had been present and participated in the murder and robbery of Mann. *Id.* Rogers told the counselor that Petitioner and Patterson told the two girls to lure Mann out of his house by pretending to have car trouble. *Id.* Then he was killed. *Id.*

Rogers herself testified during a *voir dire* hearing because the state prosecutor sought to introduce her testimony that Carroll had confessed to Rogers on the night she was murdered that Carroll, Patterson and Petitioner had killed Mann. *Id.,* at 848–88. Defense counsel objected to the admission of any such evidence and the trial court sustained the objection.

Petitioner now claims that other evidence from the Rogers' trial should have been admitted; evidence that Terry Owenby wrote to Rogers that he would confess to the murder even though he was innocent. Other evidence, he claims, would have shown that Owenby in fact had the opportunity and time to commit the murder before he was admitted to the hospital on the night of the murder for a purported drug overdose. Petitioner's argument overlooks the obvious problem: the admission of portions of the evidence from the Rogers' trial would have opened the door to the admission of the evidence recited above which the defense attorneys successfully kept the jury from hearing.

Patterson testified at the MAR hearing that sometime after February 25, 1992, he and the Petitioner went to Evergreen, Alabama, to go "mushroom hunting." Transcript of Hearing on Motion for Appropriate Relief held on December 13, 1999, Vol. II, at 245. It is unclear when they returned from that trip; however, Patterson testified that neither he nor Petitioner knew Mann had been killed until they returned from the trip. *Id.,* at 247. Patterson also testified that the night Carroll died, she told him that she had been present when Mann was murdered, along with Terry Owenby, Tom Laythe and Zonie Rogers. *Id.,* at 260.

Petitioner's claim that counsel should have presented Patterson's evidence at his trial rests on the assumption that a jury would have believed Patterson's "alibi" testimony over the testimony of two other witnesses who testified that Petitioner confessed to killing Mann. As to the testimony of Carroll's conversation with Patterson, a " 'statement tending to expose the [unavailable] declarant to criminal liability is not admissible in a criminal case unless corroborating circumstances clearly indicate the trustworthiness of the statement.' " *State v. McCail,* 150 N.C.App. 643, 649, 565 S.E.2d 96, 101 (2002) (quoting N.C. R. Evid. 804(b)(3)). In view of Rogers' statement that Carroll accused the Petitioner of the murder, there were no corroborating circumstances to show any validity to Patterson's version. *Id.* Moreover, the admission of Patterson's version of the confession could have opened the door to other evidence which defense counsel successfully kept out of the trial, *i.e.,* Rogers' version of the confession which implicated the Petitioner. Rogers' version of the statement was deemed insufficiently reliable to pass muster under the exception to hearsay. *State v. Stephenson,* 144 N.C.App. 465, 471, 551 S.E.2d 858, 863 (2001) (listing the factors to be considered). The same is certainly true of Patterson's version. *Id.*

The undersigned does not find that the conclusions of the trial court and the court's ruling on the MAR were "contrary to, or involved an unreasonable application

of, clearly established Federal law, as determined by the Supreme Court of the United States."

Finally, despite his contention that Patterson's version of Carroll's confession should have been admitted, Petitioner argues that the admission of the hearsay statements Carroll made to her aunt were improperly admitted. The trial court made the prerequisite determinations before admitting the evidence: Carroll and her aunt, Faye Stroud, had a close relationship; immediately after Mann's murder, Carroll entered an inpatient drug treatment program; upon release, she lived with her grandmother and asked her aunt not to reveal her location to anyone; Carroll received unwanted calls from Heather Rogers and Marvin Patterson; Carroll told her aunt she was afraid of these individuals; the statement contained details which Carroll could not have known unless she had actually been present during the murder; those details were corroborated by independent evidence; her motivation for the statement included fear and her close relationship with her aunt; Stroud provided a written statement of the confession to the authorities which concurs in all respects with her testimony; and thus, the statement met the indica of reliability and trustworthiness sufficient for admission. Trial Transcript, Vol. III, at 638–43.

The Court, therefore, finds that the state courts have properly adjudicated the Petitioner's case and he has not presented any showing here which warrants habeas corpus relief.

## VI.  ORDER

**IT IS, THEREFORE, ORDERED** that Petitioner's the petition for a writ of *habeas corpus* is hereby **DISMISSED** as untimely; and

**IT IS FURTHER ORDERED** as an alternative ruling, that the Respondent's motion for summary judgment is hereby **GRANTED** and the petition will be dismissed by way of Judgment filed herewith.

### *JUDGMENT*

For the reasons set forth in the Memorandum of Opinion filed herewith,

**IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED** that the Petitioner's petition for a writ of *habeas corpus* is hereby **DISMISSED** as untimely.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that, in the alternative, the Respondents' motion for summary judgment is **ALLOWED,** and the petition is hereby **DISMISSED WITH PREJUDICE** in its entirety.